DAVID COOLIDGE & others *vs.* INHABITANTS OF BROOKLINE.

A town cannot raise by taxation, or pay from its treasury, money for expenses incurred in opposing before the Legislature the annexation of the whole or of a part of its territory to another town.

ENDICOTT, J.    This is a petition by ten tax-payers to restrain the town of Brookline from paying money from its treasury for an alleged illegal purpose. Gen. Sts. *c.* 18, § 79.    On October 13, 1873, an order was introduced in the board of aldermen of Boston, that the mayor be requested to petition the Legislature for an act annexing a portion of Brookline to Boston.    It does not appear that the order was passed, or that any further action was taken upon it.    The selectmen of Brookline, October 17 following, issued a warrant for a town meeting to be held October 28, to act, among other things, upon the proposition of the city of Boston to annex thereto a part of Brookline.    At this town meeting it was voted that certain persons " be a committee for the purpose of preventing the annexation of the town, or any part thereof, to the city of Boston, and that they be authorized to employ counsel, and such other means as they deem expedient."    To defray their expenses, they were authorized by the same vote to draw

orders on the treasurer, who was directed to pay the same, and charge such payments " to the appropriation for contingencies." It was also " voted to raise and appropriate for contingencies $10,000."

The answer of the defendants admits that if a petition is presented to the Legislature asking for an act annexing the whole or any part of Brookline to Boston, the committee will appear with counsel before the Legislature or a committee thereof, and oppose the passage of such act, and pay their expenses by orders drawn in pursuance of the vote of the town. And they claim that the town has the legal right so to appoint a committee and appropriate money, and that the votes of the town " are valid, and within the lawful power of the town of Brookline to pass."

A copy of a petition by certain inhabitants of Brookline to the Legislature for a change in the boundary lines between Brookline, Boston and Brighton, was served on the town October 20, but this was after the warrant for the town meeting had issued, and no action of the town on this petition is before us. The action of the meeting was based upon the order introduced into the board of aldermen of Boston. Several questions were raised by the petitioners upon the regularity of the proceedings at the meeting, and it was argued that the town could take no legal action upon the mere introduction of such an order, and could not legally appropriate money for contingencies.

As these questions relate to the formality of the proceedings, and do not involve the decision of the case upon its merits, we prefer, without expressing any opinion upon them, to consider the principal question, which has been fully presented in the arguments of counsel. That question is distinctly raised in the answer, and the town asserts that it is the intention of the committee to use the money appropriated for the purposes named in the vote, and that it is legal so to do. The simple question therefore is, has a town power by law to tax its inhabitants for expenses incurred in opposing before the Legislature the annexation of the whole or part of its territory to another city or town ?

In *Minot v. West Roxbury*, 112 Mass. 1, it was held that a town could not legally raise money and tax its inhabitants to pay

the expenses of a committee appointed to petition the Legislature for its annexation to Boston, and to advocate and urge such annexation with counsel before the Legislature. This decision rested on the proposition that such action was not in the line of its corporate duty as a town, and was not for a purpose, and did not relate to a subject matter for which towns by the statutes, either in terms or by implication, are empowered to raise money and tax their inhabitants. Such power to tax must in all cases spring from the statutes, and must be found there in terms, or be necessarily inferred from some corporate duty imposed or some corporate right given. The only exception to this rule is confined to a few cases of usage relating to the comfort and convenience of the inhabitants of a town, such as town clocks, hay-scales, pumps, reservoirs, &c., and is not to be extended. Towns have been kept rigidly within this rule both by the Legislature and the courts. Its observance is necessary from the character of their organization and from the nature of the delegated powers which they exercise; and as there is no controlling power provided by law to restrain and limit them in the expenditures they can by law incur, and for which they can lay taxes, it is of the first importance to the tax-payer that they exercise this great power for authorized purposes, and a summary remedy against abuse of such legal power is given by the statute under which this bill is brought.

The cases on this subject, as bearing on the question here presented, were so fully considered in *Minot* v. *West Roxbury*, that it is unnecessary to review them here. As preliminary to this discussion it may, however, be said that Gen. Sts. *c.* 18, § 10, recites in detail the purposes for which towns may raise money, closing with the clause, "For all other necessary charges arising therein." These words are held to mean all necessary charges incurred in the exercise of any duties conferred or powers given in other portions of the General Statutes or in subsequent statutes, necessarily involving the expenditure of money, but what are necessary charges must in all cases be determined by the statutes.

Nothing in the statutes being found that could in terms or by implication make the expenses for procuring annexation to Boston, by an act of the Legislature, a necessary charge within the meaning of the statute, the vote of West Roxbury was declared illegal. See *Attorney General* v. *Norwich*, 16 Sim. 225. *Attorney General* v. *Guardians of the Poor of Southampton*, 17 Sim. 6. *Great Western Railway* v. *Rushout*, 5 DeG. & Sm. 290, 309. *Simpson* v. *Denison*, 10 Hare, 51, 61. Upon a careful examination of the statutes, and applying the same rule of construction as in *Minot* v. *West Roxbury*, we find nothing in terms, or by necessary implication, making expenses for resisting a change in boundary, or annexation in whole or in part to another town, one of the necessary charges named in the statute. The bearing of Gen. Sts. *c.* 2, § 9, will hereafter be considered. The case, so far as the statutes are concerned, falls within the decision of *Minot* v. *West Roxbury*, unless a distinction can be made between the right of a town to raise money to promote and obtain a fundamental change in its organization by the sovereign power, and its right to defend the existing order of things, and preserve inviolate the territory within its jurisdiction, before the same tribunal, and this distinction has been urged with much force by the counsel for the defendants.

It is contended, while admitting that a town cannot raise money to change its organization by annexation, First, that the right to defend its existence, and maintain its corporate limits when assailed, is incident and necessary to the exercise of its corporate duties, and the accomplishment of the purposes for which it was created; that questions in which it is deeply interested are involved by such action, as what its boundary shall be, what of the town property shall be taken, whether the portion left will be sufficient to carry on the town organization, and many other questions of vital importance, all of which equally apply to the annexation of the whole to another city. Second, that they have a right to be heard on these questions before the Legislature, or a committee thereof sitting as a tribunal to pass judgment between the town and those persons or corporations seeking to disturb their rights; and that this is made certain.

and that the town shall appear and be heard is clearly implied, by the provisions of Gen. Sts. *c.* 2, § 9.

It is claimed that, this right to defend being a corporate duty, as incident to its exercise, the inhabitants may be taxed for the necessary expenses attending it, which are within the meaning of the words "necessary charges."

It is important to distinguish the precise nature and extent of the right which it is asserted to be the duty of the town to defend. If it is in no absolute or qualified sense in the nature of a vested right, no corporate duty would seem to attach to it; and the town having no corporate duty in relation to it, no consequent power to raise money is to be implied.

The right as asserted in this case, is the right of the town of Brookline to continue as a municipal corporation with all its power and privileges within the territorial limits now assigned it by law. Questions might arise in regard to other rights and powers conferred on towns by general or special legislation, of a different character, subject to different rules. But here the simple question is, has this town any right to its present territorial limits, which it has a corporate duty to defend as against the action of the sovereign power from which it derives its existence, and by which it is invested with certain subordinate powers of government for local purposes over a given territory? That it has such a right to these limits that it may defend them before all other tribunals is unquestionable. Such right may be said in one sense to be vested to such extent that it may be asserted and maintained against all persons and powers except the government. Numerous illustrations of this could be given, as where corporations, persons, or officers are clothed with certain powers, subject to the control of the Legislature. But as against the government itself, such right is in no sense vested, and no consequent duty is imposed on the corporation to resist a change.

The towns of Massachusetts do not exercise their powers within their limits under a grant, or by virtue of any contract, express or implied. They are political organizations, created for political purposes, and as mere instrumentalities by which the Legislature administers certain laws within particular limits. What

those laws shall be, it is for the Legislature to determine, and from time to time modify, change or repeal. Within what limits a particular municipal corporation shall exercise these powers, whether it shall be divided, its boundaries changed, or its territory annexed to another municipality, is for the Legislature, in the absence of constitutional restriction, to determine, as the public good or the wants or necessities of the inhabitants may require. *Warren* v. *Mayor, &c., of Charlestown*, 2 Gray, 84, 104. *Opinion of Justices*, 6 Cush. 578. In the determination of these questions the corporation as such has no interest — no corporate duty to perform. The correctness of this proposition is made manifest by a cursory review of the manner in which towns are created and of their relations to the state. An act establishing a town extending over a certain territory, brings within its jurisdiction all persons residing within its limits. It is imperative and binding without assent or acceptance, though the Legislature in its discretion may make that a condition of its going into operation.

The corporation has no authority to enlarge its powers, or to determine who shall comprise its members, and has no duties to perform but those imposed by law. It cannot surrender its franchises or dissolve itself. It is created for public ends, and can only cease to exist by the act of the power creating it. While, therefore, it has corporate duties to perform to the extent imposed by the Legislature, it has no duties to perform in regard to what these duties shall be, or over what territory, or for how long a term they shall be exercised. These duties cannot extend beyond the powers granted and include any duty to maintain such powers. This question is entirely independent of the agent, trustee or depositary called a town and intrusted with municipal power, and belongs exclusively to the Legislature. *People* v. *Morris*, 13 Wend. 325. *State Bank of Ohio* v. *Knoop*, 16 How. 369, 380. *Riddle* v. *Proprietors of Locks & Canals*, 7 Mass. 169, 187. *Warren* v. *Mayor, &c., of Charlestown*, *supra*. *Eastman* v. *Meredith*, 36 N. H. 284. Dillon on Mun. Corp. § 23, and following sections.

It is difficult in considering this question always to distinguish between the wishes and interests of the inhabitants of the town

for the time being, and the powers and duty of the town itself. Much confusion arises from failure to keep the distinction in mind. But as interests and wishes change, and the corporation always remains the same, the only true test is to be found in the legal power of the town. The annexation of the town of Brookline to Boston, or a change in its boundaries, may seriously and vitally affect the interest of its present inhabitants, and be repugnant to the wishes and feelings of a large majority, but they cannot use the corporate powers of the town to enable them to oppose such change, and thereby impose burdens on the taxpayer, when the town has no corporate duty imposed or implied by law. And that the town has no such duty necessarily follows from the character of its powers, and from its relations to the government. A striking instance of the application of this rule is found in *Stetson* v. *Kempton*, 13 Mass. 272. In the war of 1812, with Great Britain, the enemy were on the coast in sight of Fairhaven, they were then laying waste and destroying property at other places, and the property and dwellings of the inhabitants of Fairhaven were in immediate danger. The town, at a regular meeting, voted unanimously $1200 for additional pay for militia and other expenditures of defence. But the court held the vote to be illegal; that the town had no authority to raise money for such purpose, and no legal duty to protect and defend its inhabitants from invasion.

Several English cases were commented on in the argument, some of which have been already cited. They all arose upon the construction of the municipal corporation act, 5 & 6 Wm. IV. *c.* 76, § 92. That section, after specifying certain expenses to which the borough fund is to be applied, uses words similar in their meaning and application to the words " other necessary charges " in our own statute : " all other expenses not herein otherwise provided for which shall be necessarily incurred in carrying into effect the provisions of this act." Lord Cottenham said in *Attorney General* v. *Mayor of Norwich*, 2 Myl. & Cr. 406, 425, that these words must mean "the expenses which would arise out of the duties imposed on the parties by the act." And in *Queen* v. *Mayor of Sheffield*, L. R. 6 Q. B. 652, it was held that

the expenses incurred for the benefit of the inhabitants by the mayor and aldermen of Sheffield, in opposing in parliament a bill introduced in relation to a supply of water to the town, could not possibly be an expense necessarily incurred in carrying the act into execution. No duty in that respect being imposed by the act, no power to use the borough fund followed.

We are clearly of opinion that a town has no corporate duty to defend its boundaries or its existence before the Legislature, and has therefore no right to tax its inhabitants therefor.

But the defendants also claim that a town has a right to be heard by the Legislature, and that this right is so recognized by Gen. Sts. *c.* 2, § 9; that it may appear legally and defend its right as a town and may tax its inhabitants for the expenses, and that such action is in the nature of a suit before the General Court, having jurisdiction of the premises.

It was said in *Minot* v. *West Roxbury*, that the right of the people to assemble and petition for redress of grievances was guaranteed by the Declaration of Rights, Art. XIX. The inhabitants of Brookline have the undoubted right to assemble and consult upon the common good, to express their opinions for or against annexation or change, and take such means either by address, petition, remonstrance, or through persons properly appointed, to inform the Legislature of their wishes. The Legislature may take such course in dealing with the application, and in hearing the inhabitants or their committee, as it may judge expedient and proper. The court cannot decide upon the propriety of such application or how it should be heard; that is exclusively for the Legislature, and we have no jurisdiction over the question. It is only on the validity of the vote to raise money that we can pass, and while the committee appointed by Brookline may properly present the wishes of the town in regard to annexation before the Legislature, we do not think that this general right to address the Legislature gives by implication any right to tax for the expenses that the committee may incur. Nor do we think that the provisions of Gen. Sts. *c.* 2, § 9, imply any additional powers in the town in that respect. " Whoever intends to present a petition affecting the *rights* of a city or town, shall

cause a copy to be served on the city or town " in the manner provided.

The word " rights " in this section cannot be held to enlarge existing rights, or to give to towns any powers or privileges not already possessed. The whole scope of this section, and of the preceding and following sections, relates to notice, and the phraseology must be construed with reference to that purpose. These sections simply provide, that when parties propose to petition the Legislature for legislative action, they shall give notice to persons or corporations who may be affected by such action. It is not imperative for the parties notified to appear, or take any action, nor is there any intimation in the statute what action shall be or may be taken. A hearing before a committee is not the only way that parties notified may present their views ; they may appear by remonstrance, or may assent to and join in the petition. The inhabitants of a town may do so by vote at a town meeting under the general power already stated, or by instructing their representatives, or may in some other manner express their opinions or wishes. There is nothing in these provisions implying that expenses may or will follow such notice by the party notified. Nor can it be presumed that parties so notified, or towns, may only oppose such petition. If any rights to act are to be inferred from such notice, it must be optional to the party notified to assent to or aid such petition as well as to resist it. If expenses are implied in such proceedings, the right to incur them must follow either course the town may take. But as it is settled, and was so conceded on the argument, that a town is precluded from paying expenses to promote annexation upon such notice, it would seem to follow that under this notice no action could be taken by the inhabitants of the town in any way to express its assent, but only to oppose. This cannot be the construction of the statute. The notice must, therefore, be taken to be only a notice to the inhabitants of a town, for them to take such action as they may by existing provisions of law, and not as in any way enlarging or extending the powers or privileges of the town as a corporation.

There is another view of this statute, which forbids the con-

Coolidge *v.* Brookline.

struction that any rights are conferred upon the town. It is evidently an act framed for the convenient ordering of the legislative business, and for preparing, before the Legislature meets, the service of such notices as the Legislature might find it necessary to issue for the purpose of obtaining proper information on the questions presented upon petition. It regulates the method in which petitions shall be presented, and does not increase or diminish the rights of parties to be affected by legislation on that particular subject. For on all subjects with which the Legislature may deal upon petition, it may also deal of its own motion and without notice to parties, and it is not precluded from such action by this statute.

These views are confirmed when we consider the character and usages of the tribunal to which the petition, upon which notice is to be given, is to be presented, and afford an answer to the argument of the defendants, that this money is to be expended in defence of a suit brought before the General Court, having jurisdiction of the premises. The Legislature is the law-making branch of the government. It passes such laws as in its judgment the public gcod requires. It may legislate on any subject within its powers, whether called to its attention by petition or not. When called to its attention by petition, it may act upon it at once, or it may seek further information before acting. It may do this in many ways, at its own bar, or through its own members by debate, or by a special committee of its members for that purpose, or by a standing committee to whom such questions are usually referred. Such committee may obtain its information either from its own investigations, or by hearing parties who present themselves, or by sending for persons and papers, under special orders of the Legislature, and paying the expenses attending such requisitions. It reports its decision to the main body, in the form of a recommendation for its action, which is passed upon after consideration and debate. The committee is in no sense a court; there is no final decision, there is no default in not appearing before it upon the statute notice, and no rights are necessarily lost by failing to appear. The rights of parties are not litigated before such committee, and the hearing of par-

ties before it is in no sense a trial. It is simply an organ of the body appointing it, to obtain information upon which they may act justly and intelligently.

The proceeding has no analogy to a suit at law, and a town has no such public duty to perform as when it is summoned to answer to legal proceedings instituted in court.

We think it evident that it was the intention of this act, that notice should be given to the inhabitants of towns of all petitions affecting their interests, for the purpose of giving them an opportunity to take proper action, and communicate their wishes on the subject to the Legislature. But it is not to be presumed from the language of the act that it was intended to arm towns, as corporations, with the power to raise money to prevent, before the Legislature, any change in their boundaries, or rights over their territory, which it is the constituted duty of the Legislature to make, if the public good requires. The Legislature might well hesitate to give such power, not only because it might obstruct the action of the legislative body, but be open to great abuse, and obnoxious to a sound public policy.

We are therefore of opinion that the injunction should issue as prayed for. *Decree accordingly.*

*C. Allen & G. Griggs*, for the petitioners.

*W. Gaston & W. A. Field*, for the defendants.