FRANKLIN FARREL AND OTHERS *vs.* THE TOWN OF DERBY AND OTHERS.

New Haven & Fairfield Cos., Oct. T., 1889. ANDREWS, C. J., CARPENTER, LOOMIS, J. M. HALL and PRENTICE, Js.

A town has power to appear before the General Assembly and oppose the granting of a petition for a division of its territory, and may employ legal counsel and incur other reasonable expenses for the purpose.
And the selectmen have power to act in the matter where the town has not otherwise taken action.

[Argued October 24th—decided December 30th, 1889.]

SUIT for an injunction, brought to the Superior Court in

New Haven County. The allegations of the complaint were as follows :—

"1st. The plaintiffs are residents and taxpayers of the town of Derby.—2d. On the 30th day of November, 1888, the plaintiffs, together with many others, brought their petition to the General Assembly of this state, at its January session, 1889, and a resolution was introduced into said Assembly, praying that the portion of said town of Derby known as the borough of Ansonia, together with outlying districts, as more fully appears by said petition and resolution, be set off from said town of Derby, and a new town constituted thereof.—3d. Said petition and resolution are now pending before the General Assembly.—4th. Of the defendants, Joel M. Wheeler, Sidney E. Gesner and Erwin W. Webster are selectmen, and Chas. E. Clark treasurer of said town of Derby.—5th. The defendants have already wrongfully and illegally paid money from the treasury of said town, and threaten and intend to wrongfully and illegally pay additional sums of money from said treasury, to counsel and others to oppose before the General Assembly the proposed division of said town, as hereinbefore stated, using in so doing money paid into said treasury by the plaintiffs in common with others. The plaintiffs claim an injunction to restrain the defendants from paying directly or indirectly, or appropriating to be paid, any money from the treasury of said town to any person or persons to oppose before the General Assembly, or the members thereof, the proposed division of said town of Derby, as hereinbefore stated."

The defendants filed an answer, the fourth paragraph of which was as follows :—

"The said Wheeler, as agent, and the said Wheeler, Gesner and Webster, as selectmen of said Derby, acting in the name and behalf of said town, did retain and employ counsel to attend to several matters and measures brought to and pending before said General Assembly, affecting and concerning the interests of said town, and to do what could properly and legally be done by them to protect and ad-

vance the interests of said town as the same should be affected as aforesaid, including in such employment the opposition by such counsel in behalf of said town to the granting of said petition and the passage of said resolution; and that they have made a payment from the treasury of such town on account of such employment, and intend to pay for all legitimate retainers, services and expenses of such counsel rendered or incurred under said employment."

To this paragraph of the answer the plaintiffs demurred, the important grounds of demurrer being that the town " had no legal right to retain and employ counsel to oppose the granting of the petition;" that it "had no legal right to retain and employ counsel to oppose the passage of the resolution;" and that it "had no right to pay to such counsel out of its treasury any money for any of the acts or services described in said paragraph."

The case was reserved, upon the demurrer, for the advice of this court.

*V. Munger* and *J. P. Kellogg*, for the plaintiffs.

1. Has a town power to employ counsel to oppose before the General Assembly the granting of a petition, or the passage of a resolution, dividing its territorial limits ? If it has this power, then it must come, either from some inherent powers vested in the towns themselves, or from the powers expressly or impliedly delegated to towns by the supreme legislative body of the state. But it has been repeatedly decided by this court that towns have no inherent powers, but are simply municipal corporations, exercising whatever powers and duties the legislature has chosen to delegate to them. "The borough and the town are confessedly inferior corporations. They act not by any inherent right of legislation, like the legislature of the state, but their authority is delegated; and their powers therefore must be strictly pursued." *Willard* v. *Killingworth*, 8 Conn., 247. In *Webster* v. *Harwinton*, 32 Conn., 131, this court, after a very full and exhaustive discussion of the adoption of the constitution of 1639 and of the rights of towns under it, says :—" And thus their pow-

ers, instead of being inherent or reserved, have been dele-
gated and controlled by the supreme legislative power of
the state from its earliest organization." *Hayden* v. *Noyes,*
5 Conn., 391 ; *Higley* v. *Bunce,* 10 id., 436 ; *New London* v.
*Brainard,* 22 id., 553 ; *Abendroth* v. *Greenwich,* 29 id., 356 ;
*Booth* v. *Woodbury,* 32 id., 118 ; *Coe* v. *Fyler,* 48 id., 145.
See also *Henderson* v. *Covington,* 14 Bush, 312 ; *Pittsburgh's
Appeal,* 79 Penn. St., 317.   This doctrine has also received
the recent sanction of the U. S. Supreme Court in *Town of
Bloomfield* v. *Charter Oak Bank,* 121 U. S. R., 121.   See also
Dillon on Mun. Corp., 28–30.   It is a fundamental and well
settled principle underlying all corporate existence, that
corporations can exercise only such powers as are expressly
granted or which are incident thereto and necessary to ena-
ble them to carry those powers into effect, and that such
powers will be most strictly construed, particularly upon the
subject of appropriation of public funds.   *Davis* v. *Mayor
·&c. of New York,* 1 Duer, 451.   Nowhere in our statutes can
such a power be found among the powers expressly granted
to towns.   Can it then be claimed that a town is impliedly
empowered to do this ?   That is, has a town any such im-
plied right to its existing boundaries that it may defend them
against that legislative body which has given the town all
the powers it possesses and even its existence itself ?   One
of the earliest leading cases upon this point is that of *Stet-
son* v. *Kempton,* 13 Mass., 272, cited approvingly by this court
in several cases, and by Dillon and other writers.   The ques-
tion in this was whether the town of Fairhaven could raise
money to resist the landing of British troops, then in sight
of the coast, and threatening to land and destroy the dwell-
ings and other property of its inhabitants.   The town, at a
regular meeting, voted unanimously $1,200 for pay for mili-
tia and other defenses.   But the court held the vote to be ille-
gal, that the town had no authority to raise money for such
a purpose, and that no legal duty rested upon it to protect
and defend its inhabitants from invasion.   The court said:—
" With respect to the defense of any town against the incur-
sions of an enemy in time of war, it is difficult to see any

principle upon which that can become a necessary town charge. It is not a corporate duty to defend the town against an enemy. This properly is the business of the state." Much less then is it a corporate duty to defend the town against the action of that sovereign power from which all of its powers and existence itself have come. The principle of *Stetson* v. *Kempton* is precisely the same as that of the Soldiers' Bounty cases of our own court. "Such incidental powers must spring from some power granted in terms, and relate to a subject matter set forth with distinctness in some portion of the statutes, and which is in some way necessary for the town to do in carrying out and performing its corporate duties as an existing body politic. Else it has no power to tax its inhabitants." *Minot* v. *West Roxbury*, 112 Mass., 6. Fortunately for the plaintiffs, the exact question sought to be determined in this case has already been determined in two of our New England states, Maine and Massachusetts. *Coolidge* v. *Brookline*, 114 Mass., 592, is a case exactly parallel with the one in question, with the single exception that in that case the employment of counsel was authorized and directed by vote of a town meeting, rather than by the selectmen alone, as in the present case. It was voted at this meeting that counsel be employed to oppose before the legislature the annexation of a part of the town of Brookline to the city of Boston. And, as in the present case, an injunction was sought for by several taxpayers to restrain the town from paying money from its treasury in accordance with this vote. The court said:— "But here the simple question is, has this town any right to its present territorial limits which it has a corporate duty to defend as against the action of the sovereign power from which it derives its existence, and by which it is invested with certain subordinate powers of government, for local purposes, over a given territory? That it has such a right to these limits that it may defend them before all other tribunals is unquestionable. * * * But as against the government itself such right is in no sense vested and no consequent duty is imposed on the corporation to resist a change. * * *

We are clearly of the opinion that a town has no corporate duty to defend its boundaries or its existence before the legislature and has therefore no right to tax its inhabitants therefor." In *Westbrook* v. *Deering*, 63 Maine, 231, this precise question was also tried, with the same exception, that the expenditures were authorized by vote of a legal town meeting. This was an action of assumpsit to recover two thirds of certain expenses incurred in opposing before a legislative committee a petition for a division of the town of Westbrook. The petition was finally granted and a part of the old town was set off and called the town of Deering. The act setting this off provided that two thirds of the existing debts and liabilities of the town of Westbrook should be paid by the town of Deering. The court held that a town could not incur expenses in opposing before a legislative committee a division of its territorial limits. See also *Opinion of the Justices*, 52 Maine, 598; *Frankfort* v. *Winterport*, 54 id., 250. The fact that notice must be given under our statutes that such a petition will be presented to the legislature, and the fact that notice was served upon the town of Derby in this case, gives this town no new rights, duties or powers. " This notice is only directory of the practice of the General Assembly, and may at its pleasure be dispensed with." *First Society of Waterbury* v. *Platt*, 12 Conn., 198; *Hartford Bridge Co.* v. *East Hartford*, 16 id., 149; *Granby* v. *Thurston*, 23 id., 416. The General Statutes of Massachusetts and Maine contain statutes very similar to our own in respect to serving notice of the bringing of petitions to the General Assembly. Mass. Gen. St., c. 2, p. 9; Maine R. S., c. 2, pp. 26, 27, 28. These statutes have both been considered very fully in the cases cited above of *Coolidge* v. *Brookline* and *Westbrook* v. *Deering*. We quote from the former:— " The notice must, therefore, be taken to be only a notice to the inhabitants of a town, for them to take such action as they may by existing provisions of law, and not as in any way enlarging or extending the powers or privileges of the town as a corporation. * * * It is evidently an act framed for the convenient order of legislative business. It regu

lates the method in which petitions shall be presented, and does not increase or diminish the rights of parties to be affected by legislation on that particular subject. * * * The proceeding has no analogy to a suit at law, and a town has no such public duty to perform as when it is summoned to answer to legal proceedings instituted in court." The Supreme Court of Maine, in commenting approvingly, in the above case of *Westbrook* v. *Deering*, on this view of their statute concerning notice, quoted freely from this opinion. In view of the above it cannot be argued from the mere fact that the town of Derby was notified to appear before the General Assembly and was given notice that this petition was pending, that thereby the town acquired any new rights or powers, and that they could employ counsel to appear for them. They already had their chosen representatives sitting in the legislature, who were there to care for the interests of their town in cases like this. There could be no default taken by reason of their not appearing upon this statutory notice, and no rights could have been lost by their failure to appear.

2. The town of Derby has never taken any action upon this subject. The selectmen have acted entirely upon their own responsibility. They have never called a town meeting to advise them. Selectmen in this state have only such powers as are conferred upon them by the statutes. Gen. Statutes, §§ 64 to 70. Section 64 provides that "they shall superintend the concerns of the town, adjust and settle all claims against it, and draw orders on the treasurer for their payment." It is manifest that the power to employ counsel must be found, if at all, in the clause authorizing them to "superintend the concerns of the town." But it is no concern of a town if some of its inhabitants petition the legislature for a change in its boundary line. The town as such is in no way affected by such a change. A change in the boundary line of a town only affects a number of people and a certain amount of property. No new rights are conferred, no old ones are taken away. All that is done is simply to declare that a certain number of people shall

reside in a new town instead of the old one. This is purely a matter of convenience and business advantage, which concerns only the people interested. If the legislature see that it is best to confer corporate rights upon a certain number of people, no other town or community has any just cause of complaint. It thus becomes clearly apparent that these proceedings are not such "concerns" of a town as call for the supervision of the selectmen. This particular power was discussed in the case of *Union* v. *Crawford*, 19 Conn., 331. In that case suit had been brought against the town, and one of the selectmen appeared and made defense. It was claimed that he had no right to appear as selectman, but this court held that he had such power, saying:—"Upon the whole, therefore, we are inclined to think, although not without some hesitation, that selectmen, under the general authority given them to superintend the concerns of their town, have a right to appear as such in suits in which the town is a party, and prosecute or defend as the case may require." The court further say:—"Now, if a suit in which a town is a party is one of the concerns of that town, it falls literally under the superintendency of the selectmen." Why? Because it involves the payment of money, and, consequently, the question of taxation. A suit necessarily means expense, and possibly a judgment against the town; it may be for a large sum, and this must be paid. How? The court gives the answer:—"They alone have power to adjust and settle the matter in controversy. They alone are authorized to draw an order upon the treasury for the payment of whatever sum may be found due on such settlement." Here, then, is the reason why a suit against a town is one of the "concerns" of the town. It involves expense which the town may have to pay. But a petition by one or more residents of a town, asking for a change in its boundary lines, is in no sense a suit against the town. No judgment can possibly be rendered against it, and in no way can it be put to one dollar's expense. It is purely optional with the town whether it will make opposition. The selectmen, as such, have no control over the matter. They cannot

adjust or settle it. Its final settlement rests with the legislature, and the only possible termination of the proceeding is to grant or deny the prayer of the petitioners.

3. These views are confirmed by the statutes relating to the service of process. Section 908 provides that in actions against towns the service of the process shall be by leaving a copy " with or at the usual place of abode of the clerk, or either of the selectmen." This relates to all cases where a town is made a party to the suit. Section 388 provides that " every petition to the General Assembly of an adversary nature shall be accompanied with a citation to the adverse party, etc.; provided that when the adverse party shall consist of more than twenty individuals it shall be sufficient to give such notice as any judge of the Superior Court may order." In the present case a judge ordered notice to be published for one week in a newspaper printed in Ansonia. This was because the " adverse parties " consisted of more than twenty individuals; but this notice was to them as individuals. It was not given to the town as such. Nor was it given to either of the selectmen. The petition concerned the people; not the town as a corporation. Thus it is manifest that the statutes make a clear discrimination between towns, as such, and their inhabitants. If the statute intended that such petition was a suit against the town, which it became the duty of the selectmen to superintend, then it would have made provision for that notice as in other cases against towns.

C. R. *Ingersoll* and E. B. *Gager*, with whom was W. H. *Williams*, for the defendants.

CARPENTER, J. This is a complaint by certain residents and tax-payers of the town of Derby, praying for an injunction restraining the defendants from paying the charges of counsel, and other expenses, incurred in defending against the petition for the incorporation of the town of Ansonia.

The controversy arises mainly under the fifth paragraph

Farrel v. Town of Derby.

of the complaint and the fourth paragraph of the answer. The former is as follows:—

" The defendants have already wrongfully and illegally paid money from the treasury of said town, and threaten and intend to wrongfully and illegally pay additional sums of money from said treasury, to counsel and others to oppose before said General Assembly the proposed division of said town, as hereinbefore stated, using in so doing money paid into said treasury by the plaintiffs in common with others."

The paragraph of the answer referred to is as follows:—

" The said Wheeler, as the agent of said Derby, and the said Wheeler, Gesner and Webster, as selectmen of said Derby, acting for and in the name and behalf of said town of Derby, did retain and employ counsel to attend to several matters and measures brought to and pending before said General Assembly, affecting and concerning the interests of said town, and to do what could properly and legally be done by them to protect and advance the interests of said town, as the same should be affected as aforesaid, including within such retainers and employment the opposition by such counsel in the name and behalf of said town to the granting of said petition and the passage of said resolution; and that they have made a payment from the treasury of such town on account of such employment, and intend to pay for all legitimate retainers, services and expenses of such counsel rendered or incurred under said employment."

This paragraph of the answer is demurred to, in the first place, because " it is not alleged, nor does it appear by said answer, what the several matters and measures were that were pending before said General Assembly." There are seven other causes of demurrer assigned, which may be summed up and expressed in the language of the plaintiffs' brief—that the town has " no power to employ counsel to oppose before the General Assembly the granting of a petition, or the passage of a resolution, dividing its territorial limits."

It will be noticed that the answer expressly admits the precise thing and all that the complaint alleges. The fact

that it is included in "several matters and measures" not named, can neither enlarge the scope of the complaint nor destroy the effect of the admission.

But if necessary to specify the other "matters and measures," we think they are sufficiently specified for all the purposes of the answer. The complaint, in terms, only refers to the matter of dividing the town. While that may fairly include a division of the property, debts, burdens, etc., yet they are not named. The answer brings upon the record the petition and resolution, so that the court can see just what the legislature was asked to do. In looking at the resolution we find that it embraces several distinct "matters and measures." If they were what the answer referred to, and they probably were, the first cause of demurrer has no foundation in fact.

We come then to the other causes of demurrer, which raise the main question—has the town as such the right and power to employ counsel and expend money in proper ways, in opposing the granting of the petition and the passage of the resolution? It will be observed that the question we are considering is not whether the town has a right to resist the sovereignty of the state in an attempt to change the territorial limits of the town. Had the state of its own motion, for reasons of public policy, taken steps to change the boundaries of the town, or abolish it altogether, the case presented would have been a very different one. But the attack was not made by the state from motives of policy and in the interest of good government, but was made by certain parties who sought thereby to promote their own interests. The attack was not directed alone against other individuals who differed from them, but against the town as well. The end sought involved not only a dismemberment of the town in respect to territory and population, but also a division of its corporate property, a reduction of its grand list, an apportionment of its debts, liabilities, and burdens as to highways, bridges, paupers and the like. In respect to these matters the town and every tax-payer in the town had an interest; and they and every one were duly cited to appear before the

legislature that they might be heard. The proceeding was of an adversary nature, and the opposing parties were brought before the supreme tribunal of the state, that the matter might be adjusted. Here then were all the elements of ordinary litigation—a court having competent jurisdiction, parties in interest, and matters in controversy. The town then was not antagonizing the state, but was defending a cause against its equal, and only its equal, before an impartial tribunal.

Nor should this case be confounded with those cases in which towns have exercised powers which more properly pertain to the functions of the state or the general government; such as *Stetson* v. *Kempton*, 13 Mass., 272, in which it was held that the town had no power to appropriate money to defend the inhabitants and property of the town against a foreign enemy; the bounty cases in this state, and the like.

Neither is this case to be controlled by those cases in this state and elsewhere which hold that towns have no inherent or reserved powers of legislation, of which many of the cases cited by the plaintiffs are examples.

On the other hand we do not deem it necessary to decide whether towns in this state are essentially different in respect to their origin, powers and duties from towns in other states. We assume that towns have only such powers as are conferred by statute, expressly or by reasonable implication.

Powers and duties carry with them corresponding obligations and rights. Public duties imposed upon towns and the right to have and hold property are inseparable ; and the right to hold property begets the power to protect and defend it. These simple and obviously correct propositions will not be controverted. Let us make the application.

Has the town power to pay its counsel?

That question will be substantially answered by the answer to another—had the town a right to appear? In the somewhat exhaustive brief of the plaintiffs we nowhere find the bald proposition in so many words, that the town had no right to defend. The right of the selectmen to defend

without a vote of the town is denied on the ground, as it is claimed, that the matter does not concern the town, and therefore that the selectmen, under section 64 of the General Statutes, which provides that they shall superintend the concerns of the town, had no power to act. Granting the premises, the conclusion follows. Another conclusion, that the town itself had no power, would seem to be equally logical. But the argument impliedly admits that the town might act. That admission destroys the premises; for if the town may act, it is because the town is interested; if interested, it is one of the concerns of the town. If the town fails to take action, it is the duty of the selectmen to take such action as they may deem advisable.

The right of self-defence is well nigh universal. Towns are not exceptions to the rule. They have a right to defend their existence, and to ask for its continuance, even when it is proposed to deprive them of it by law. So long as they exist, and must exist, with certain burdens imposed upon them, certain duties from which they cannot escape, they have a clear right to defend their integrity. When it is proposed to change those burdens, by increasing or lessening them, with a corresponding change in their means and facilities, their right to be heard must be unquestionable.

That a town is interested in questions necessarily arising on the division of the town is hardly a debatable question. What is a town? A corporation. Who are the parties in interest? Every individual residing within its limits. How are they interested? Very much as stockholders in other corporations are—in the prosperity and well being of the corporation with which they are connected. Their interest pertains, not to their own private affairs but to the affairs of the corporation. It is not several, but an interest in common. Now the argument is that the organized community may not appear to protect the community interest, but each individual in the community may appear and defend such interest as he may have, infinitesimal though it may be, in common with all the others. We confess our inability to appreciate the force of this logic. If either is to

be excluded it would seem more natural to exclude the individual and admit the corporation. It seems to us much more reasonable that the organization, representing the whole, should act for the benefit of all and at the expense of all.

But, as already remarked, the claim is not made in terms that the town had no right to appear and defend. It did in fact appear, and, so far as we know, without objection. The matter had been pending before the legislature two months when this suit was brought. During that time the matter had been heard or partially heard, counsel for the town appearing and taking part, and presumptively with the knowledge of some of these plaintiffs, for they were petitioners. In bringing the suit no suggestion was made that the town wrongfully appeared; the sole ground of complaint is that the expenses have been, and are to be, wrongfully paid. What reasons are there for this complaint?

We start now with the proposition conceded, or established, that the town had a right to appear. Engrafted on that proposition is the claim that the town has no right to pay the expense. That is the precise question. Of what avail is the right to defend, if the town is deprived of the power to exercise the right? Towns can only appear by agent or attorney. Agents and attorneys do not ordinarily appear in such cases at their own expense. How are they to be obtained without compensation? It may be said that individuals interested may employ counsel. True; but what sense is there in imposing upon individuals burdens which properly belong to the town? Why cripple a town in maintaining its rights, by compelling it to depend upon voluntary contributions?

Let us examine this matter a little more in detail. The first proposition is to make two towns of one. That involves a division of the grand-list. The town is reduced, it may be, from a first class town in point of wealth and population, to one of the third or fourth class. It may be that every resident of the remaining town would prefer that the former state of things should continue. But his preferences

are rendered practically unavailing by the inability of the town to bring the matter to the attention of the legislature. Is this right? True, each person may appear for himself. But an organized defense for and in behalf of the whole would be more effective and less expensive.

Again. The division of a town makes necessary the maintenance of two town organizations, with public buildings, instead of one. Here is a matter directly affecting the town pecuniarily, by increasing the expense probably. It is, or may be, a legal injury. May not the town employ and pay counsel to prevent such injury? The question answers itself. Moreover, this resolution apportions the town deposit fund, the property of the old town, its debts and liabilities, and also its duties and burdens. These are matters which do directly concern the town obviously and necessarily. It is well nigh absurd to say that the town has a right to appear and be heard, and yet has no power to pay the expense of such hearing. It seriously impairs, if it does not practically destroy, the right.

We have not overlooked the fact, suggested in the complaint, that the plaintiffs and others, residents in the new town, are taxed to pay the expenses of resisting the petition. There may be an apparent injustice in this; but we doubt if it is real. That was a matter for the legislature rather than the court. The legislature might have provided, as it did in the case of Beacon Falls, (see 8 Special Laws, 52,) that the town of Derby as it now is should pay all such expenses. But it did not; on the contrary, the second section provides that "said new town shall pay its proportion of the present debts, liabilities, charges and expenses, suits, petitions and claims, already due and accrued, commenced and existing, against said town of Derby, etc." That clearly includes all legitimate expense incurred in defending the petition for a new town. So that by its express language, as well as by its silence, the legislature has recognized the duty of paying them by the town of Derby as it was; and we cannot say that it is unjust. The legislature may have had the best of reasons for its action.

Incidentally we remark that the legislature, in the case of Beacon Falls, expressly recognized not only the right of the towns to defend such petitions, but also the power to pay the bills.

Prior to 1852 all petitions to the General Assembly of an adversary nature were required to be served on adverse parties in the ordinary way of serving civil process. Under that statute the practice is believed to have been universal to serve the petition on the town or towns to be affected. The substitution of an order of notice by a judge of the Superior Court in 1852, made no change except in the mode of service. This is another recognition of the right of the town to be heard, and, by strong implication, of its power to pay the expenses.

Applications for the incorporation of new towns have been numerous and frequent in this state. We apprehend that few cases can be found in which the towns to be affected did not take action either for or against the application. The custom has been general, if not universal, for the towns to pay the expenses of such action. The fact that this question has not been raised heretofore, either in this court or in the Superior Court, affords some presumption against the plaintiffs' contention. A practice acquiesced in by the bar and the public for so long a time, is pretty good evidence of what the law is, and of what it ought to be.

We are not unmindful of the cases cited in behalf of the plaintiffs from Massachusetts and Maine, and that they are inconsistent with the views herein expressed. We have given those decisions and the reasons by which they are supported a careful consideration, and are constrained to say that neither the reasons nor the conclusions are satisfactory to us. In the more prominent case, *Coolidge* v. *Brookline*, 114 Mass., 592, one argument is that the town has no vested right to its territorial limits and therefore has no corporate duty to defend those limits against the state. That does not quite reach the question before us, which is not a question of duty, but of right and power. The town may violate no duty to the state or to others if it makes no de-

fense; but when its pecuniary interests are to be affected has it not a right to be heard? True, the town has no vested right to its territorial limits in the sense that the legislature may not at its pleasure change those limits; but will the legislature for that reason deny it a hearing? The right of petition includes the right of remonstrance, and when the legislature proposes to do an act detrimental to the town, we have no doubt that in Massachusetts, as well as in Connecticut, a respectful remonstrance will be graciously received and fairly considered.

The opinion in that case concedes that the town may defend its limits before all tribunals except the legislature itself. This seems to imply that if others apply to the legislature to enlarge or restrict the limits, the town may not resist the change. If that is its meaning we cannot assent to it. We do not understand that the character of the tribunal before which a claim is made will at all affect the rights or the standing of the parties. We cannot believe that the legislature is less willing to grant a full hearing to all parties in interest than are other tribunals. In that case the change in the boundary lines of Brookline is treated simply as a change in the public duties required of the town. Here, as we have seen, the case goes much further and materially affects rights of property as well.

For these reasons the Superior Court is advised to render judgment for the defendants.

In this opinion the other judges concurred; except AN-DREWS, C. J., who dissented.