## VALENTINE v. ROBERTSON et al.

(Circuit Court of Appeals, Ninth Circuit. July 14, 1924.)

No. 4204.

1. **Municipal corporations ⬠57—Have only powers expressly granted or necessarily implied.**

   A municipal corporation has only such powers as are expressly granted, or are necessarily or fairly implied from those granted, or are essential to the declared objects or purposes of the incorporation.

2. **Municipal corporations ⬠58—Doubt as to powers resolved against corporation.**

   Any doubt as to the existence of a power in a municipal corporation will be resolved against it.

3. **Municipal corporations ⬠861—City held without implied power to appropriate public money to pay for legislative lobbying.**

   Authority granted to a city to "provide for the location, construction and maintenance of streets" *held* to carry no implied power to appropriate public money for payment of an emissary to lobby for the passage of a legislative act authorizing the city to issue bonds for street improvements.

4. **Municipal corporations ⬠995(1)—Taxpayer may sue to enjoin misapplication of funds.**

   A taxpayer may maintain a suit in equity to restrain a city from unlawful expenditure of public money.

Appeal from the District Court of the United States for the District of Alaska, Division No. 1; Thomas M. Reed, Judge.

Suit in equity by Emery Valentine against R. E. Robertson, B. M. Behrends, as treasurer of the City of Juneau, Alaska, and the City of Juneau, Alaska. Decree for defendants, and complainant appeals. Reversed and remanded, with directions.

James Wickersham, Joseph W. Kehoe, and Grover C. Winn, all of Juneau, Alaska, for appellant.

Hellenthal & Hellenthal and R. E. Robertson, all of Juneau, Alaska, for appellees.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge. The appellant brought a suit to enjoin the payment of $2,000 appropriated by the common council of the city of Juneau to defray the expenses of one Robertson in going to Washington, D. C., and using his best endeavors to forward the passage of legislation advancing certain projects in which the members of said common council were interested. From the order of the court below, dissolving the injunction and dismissing the bill, this appeal is taken.

The projects on which the common council desired legislation by Congress, as shown by their amended resolution adopted on January 29, 1924, included (1) the division of the territory of Alaska; (2) the erection of a government dock at Juneau; (3) the erection of a government building at Juneau; (4) the dredging of Gastineau Channel at Juneau; (5) the dredging of a canal from Hawk Inlet to Stevens Passage; (6) a canal connecting Stevens Passage with Oliver's Inlet;

⬠For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

(7) the establishment of a mail route on the north shore of Chichagof Island; (8) the establishment of a land office at Juneau; and (9) the dredging of Wrangell Narrows. By the resolution the services of said Robertson were also engaged to work in conjunction with the delegate from Alaska to secure the passage of a bill, then pending in Congress, to authorize the city of Juneau to issue bonds for street improvements and the establishment of permanent streets in the city. The resolution provided that said Robertson was to render said services without further expense to the city than payment of his expenses to and from Washington, and it appropriated for that purpose $2,000.

It appears from the record that on January 18, 1924, by resolution the common council appropriated $2,000 to compensate Robertson and pay his expenses to Washington to "lobby before Congress" for legislation to carry out the first nine projects which are mentioned in the later and "corrected" resolution of January 29, 1924, and no mention was made of the tenth project, the authorization of the issuance of bonds for city improvements. It was not until after the present suit was commenced, and a temporary restraining order had been issued, that the common council adopted the resolution of January 29, wherein they added to the nine projects mentioned in their previous resolution the legislation authorizing the city to bond itself and construct streets. It is only by the tenth project, so added, that the later resolution acquires the semblance of legality. The court below, while holding that an appropriation by the city for the other projects mentioned could not be held valid as for municipal purposes, was of the opinion that to obtain legislation for the improvement and construction of public streets in the city, a function which the city was bound to perform, money might properly be appropriated, as was done by the later and corrected resolution.

[1, 2] A municipal corporation has only such powers as are expressly granted, or are fairly or necessarily implied from those granted, or are essential to the declared objects or purposes of the incorporation. And any doubt as to the existence of a particular power will be resolved against it. Boise v. Boise Water Power Co., 186 Fed. 705, 108 C. C. A. 523; Omaha Electric Light & Power Co. v. City of Omaha, 179 Fed. 455, 102 C. C. A. 601. Obviously the court below properly held that the appropriation of public money to pay the expenses of a lobbyist for the furtherance of the first nine projects mentioned in the resolution was beyond the powers of the Common Council. The question remains whether the addition of the tenth project renders legal the appropriation which was expressly made to pay for services in lobbying for all the projects.

[3] It is not claimed that there was express power to appropriate money to secure congressional legislation authorizing the city to issue bonds for the improvement of its streets. But it is claimed that such authority is implied in the grant of authority to "provide for the location, construction and maintenance of streets." In the opinion of the court below, stress is laid upon the allegation in the answer that "R. E. Robertson is the acting city attorney of the city"; but we

cannot see how that allegation affects the case. While in 19 R. C. L. 774, it is said that, "although there is authority to the contrary," a municipal corporation may employ counsel to appear before a committee of the legislature to advocate or oppose pending measures affecting its corporate interests, but one case is cited to support the text. Farrel v. Derby, 58 Conn. 234, 20 Atl. 460, 7 L. R. A. 776. In that case it was held that a town had power to appear before the Legislature and oppose a petition for the division of its territory, and that it might employ legal counsel and incur other reasonable expenses for that purpose. But in that case the officers of the town, in response to a notice served upon them, were called upon to defend the town against a petition in a "proceeding of an adversary nature." The court said:

"Here, then, were all the elements of ordinary litigation—a court having competent jurisdiction, parties in interest, and matters in controversy."

The situation which was before the court in that case is far different from that which is presented here. The city of Juneau is not defending itself against any invasion of its corporate functions. Upon its own initiative it is seeking only to enlarge its powers. The appellees cite In re Taxpayers & Freeholders, 27 App. Div. 353, 50 N. Y. Supp. 356, where it was held that, under a statute authorizing town trustees to employ an attorney "when the business of the board of trustees of the village requires" it, the trustees might employ counsel to appear before the Legislature and Governor in relation to any law pertaining to the town, and that his claim for services will be valid. But no such authority was given to the common council of Juneau. The only provision applicable is section 23, chapter 97, Session Laws Alaska 1923, which is as follows:

"*Duties of Municipal Attorney.* The municipal attorney shall be the legal adviser of the council and the other officers of the city in reference to their official duties and he shall represent the city as attorney in all civil and criminal proceedings in which the city is interested."

In the leading case of Henderson v. City of Covington, 14 Bush (Ky.) 312, it was held that a city council had no power to appropriate revenues of the city to obtain an increase of the powers of the corporation through persons sent by the council to appear before the Legislature and Congress. Said the court:

"If the authorities of cities and towns may, at their discretion, use the corporate revenue to procure such legislation as they may deem to the interest of their municipalities, the worst consequences may be apprehended. Such a practice would inevitably lead to abuses, and the history of municipal corporations in this country during the last quarter of a century gives ample warning of the danger of relaxing the well established rule that municipal charters are to be strictly construed, and the powers of corporate authorities confined to such as are granted in express words, or are necessarily and fairly implied, or are essential to the objects of their creation."

In James v. City of Seattle, 22 Wash. 654, 62 Pac. 84, 79 Am. St. Rep. 957, it was held that expenditures provided for by an ordinance authorizing certain officers of the city to visit other cities to secure information on waterworks, street paving, etc., could not be

regarded as essential for municipal purposes and that the council was without power to authorize the payment thereof. The court said:

"The members of the city council are trustees. The body holds a trust for the inhabitants of the city. The terms of the trust are fixed by legislation, and no expenditure of money belonging to the city can be made without express authority, or implied authority by reason of a necessary granted power."

In Field v. City of Shawnee, 7 Okl. 73, 54 Pac. 318, the board of trustees of a town engaged the services of the plaintiff to go to Washington to present facts and reasons to the Secretary of the Interior to induce him to require the location of a certain railroad upon a line to run through the territorial limits of the town. It was held that the contract was not in furtherance of any purpose for which the corporation was created nor within the general scope of its powers.

In Colusa County v. Welch, 122 Cal. 428, 55 Pac. 243, it was held that a contract for the employment of an attorney to secure, by means of personal solicitation, and by means of private interview with members of the Legislature, and by means of lobbying, the defeat of a certain bill, was in excess of any powers conferred upon the board of supervisors of the county. Said the court:

"In the case at bar the supervisors had no duty in the premises to perform. They had no authority to influence, or to employ others to influence, the Legislature in the action which, in its wisdom, it should see fit to take. * * * There is no such authority given, either directly or by implication, to boards of supervisors, and the attempt to exercise it by the board in the case at bar was null and void."

In Coolidge v. Brookline, 114 Mass. 592, it was held that a town cannot raise by taxation, or pay from its treasury, money for expenses incurred in opposing before the Legislature the annexation of the whole or a part of its territory to another town. The court said:

"Such power to tax must in all cases spring from the statutes, and must be found there in terms, or be necessarily inferred from some corporate duty imposed or some corporate right given."

So in Westbrook v. Deering, 63 Me. 231, it was held that a town cannot incur expenses in opposing before a legislative committee a division of its territorial limits; that such use of money was not provided for in express statute and could not be included in the general clause "other necessary town charges." That clause was held to embrace only all incidental expenses arising directly or indirectly in the due and legitimate exercise of the various powers conferred by statute.

In State v. Superior Court, 93 Wash. 267, 160 Pac. 755, L. R. A. 1917B, 354, it was held that under the statute creating the port of Seattle, a municipal corporation with express power to build and operate docks, harbor improvements, etc., the port commissioners had no implied authority to expend public funds to defeat a referendum measure submitted at a general election to increase the number of the members of the board and limit the bonded indebtedness of such port. The court said that, if the port commissioners may take the money of the port for "political purposes, or purposes other than those for which the port was organized, then there is no limit upon the port commissioners in expending the money of the port."

The appellees, as did the court below, rely upon Meehan v. Parsons, 271 Ill. 546, 111 N. E. 529, in which it was held that a city which must expend a large sum of money in building and rebuilding levees to protect itself against inundation, was not inhibited by public policy to authorize its mayor to endeavor to secure federal aid by obtaining an appropriation by Congress, and to pay his legitimate and reasonable expenses in interviewing members of Congress, and other services in securing such appropriation. In that case the Supreme Court of the state reversed the decision of the Illinois Appellate Court and decided the point involved without reference to any reported case, or other authority, on the subject of the implied powers of municipal corporations. Unless the decision is supported by some local statute or rule of interpretation of the powers of municipalities of the existence of which the opinion does not advise us, we think that it is opposed to the decided weight of authority as to the implied powers of municipal corporations.

[4] The appellees deny the right of the appellant as a taxpayer to invoke the aid of a court of equity to restrain an unlawful expenditure of the money of the city. Opposed to their contention is the well-settled rule of the federal courts. Crampton v. Zabriskie, 101 U. S. 601, 609, 25 L. Ed. 1070; Mass. v. Mellon, 262 U. S. 447, 486, 43 Sup. Ct. 597, 67 L. Ed. 1078; Colorado Pav. Co. v. Murphy, 78 Fed. 28, 23 C. C. A. 631, 37 L. R. A. 630. Likewise opposed to it is the almost universal rule of the Supreme Courts of the states. 19 R. C. L. 1163, and cases there cited.

The city of Juneau has the benefit of the aid of a delegate to Congress from the territory of Alaska, upon whom it may call for the furtherance of any necessary legislation in Congress. We hold that it has no authority, express or implied, to engage and pay for out of the public funds an emissary to go to Washington to lobby for the passage of the pending bill to authorize the city to issue bonds for street improvements or for the furtherance of any of the projects mentioned in the resolution of January 29, 1924.

The judgment is reversed, and the cause is remanded to the court below, with instructions to grant the injunction as prayed for in the bill.