(August 22, 1911.)

HORACE E. OSTRANDER, Appellant, v. THE CITY OF SALMON, a Municipal Corporation, Respondent.

[117 Pac. 692.]

MUNICIPAL CORPORATION—SUBMISSION OF QUESTION OF ISSUING MUNICIPAL BONDS—AUTHORITY TO PURCHASE WATERWORKS.

(Syllabus by the court.)

1. Under the provisions of sec. 2315, Rev. Codes, power is given cities and towns incorporated under the laws of this state to issue municipal coupon bonds, and eight different purposes are enumerated for which such bonds may be issued; and an ordinance, as

authorized by Rev. Codes, sec. 2316, providing for the submission of the question of issuing municipal coupon bonds for the purposes enumerated in sec. 2315, should specify separately the different purposes for which such bonds are to be issued in accordance with the statute, and the voter should be given an opportunity to express his will upon each proposition separately.

2. An ordinance which states the purpose of a proposed issue of municipal bonds as follows: "That it is the purpose and intention of the chairman and board of trustees of the Village of Salmon City to incur such indebtedness and issue such bonds in the total amount of fifty thousand (50,000) dollars, thirty thousand (30,000) dollars of which amount shall be used for the purchase of the waterworks, water rights, system and franchises of the Salmon City Water Company, Limited, and that an amount not to exceed the sum of fifteen thousand (15,000) dollars of such indebtedness and bonds shall be used to enlarge and extend the said waterworks and water system, and an amount not to exceed the sum of five thousand (5,000) dollars shall be used for the purchase, erection, construction and furnishing of a public building and building site for the use of such village," states two separate and distinct purposes and questions, and the ballot used at the election which requires the voter to designate thereon his vote either for or against the single proposition of favoring or disapproving the issue of the aggregate amount of the bonds proposed does not give the voter an opportunity of expressing his will upon each of the purposes and questions incorporated in the ordinance.

3. Several distinct and independent purposes or propositions may be incorporated in one ordinance submitting the question of issuing municipal bonds by a municipal corporation, providing such purposes are separately stated and the voters at the municipal election are given an opportunity to express their will upon each purpose or question as a separate and independent proposition or question.

4. Under the provisions of sec. 2238, subd. 36, Rev. Codes, cities and villages are given full power to "acquire, by purchase or otherwise, waterworks or plants, and illuminating plants, and to supply the municipalities and the inhabitants thereof with water and light . . . . ," and such power is not circumscribed or affected by the provisions of subd. 1 of sec. 2315 of the Rev. Codes, as the power to issue bonds under said section for the construction and maintenance of waterworks and supplying the same with water also includes the power to issue bonds for the purchase of waterworks already constructed.

APPEAL from the District Court of the Sixth Judicial District for Lemhi County.   Hon. James M. Stevens, Judge.

An action to determine the validity of a proposed issue of municipal bonds. *Reversed.*

F. J. Cowen, and J. P. Nixon, Jr., for Appellant.

This court has held that different propositions for different objects may be embodied in one ordinance, provided that each proposition is so clearly and distinctly submitted to the electors of the municipality that they may adopt or reject it, independently of the others. (*Sommercamp v. Kelly,* 8 Ida. 712, 71 Pac. 147; *Platt v. City of Payette,* 19 Ida. 470, 114 Pac. 25.)

The inference from these two cases is so plain that the court would be bound to reverse itself in order to sustain a proposed issue of bonds, as in the present case, where one vote is taken for three separate and distinct purposes. But the inference is supported by authorities from other states, in which the question is directly ruled upon. (*McBryde v. City of Montesano,* 7 Wash. 69, 34 Pac. 559; *City of Denver v. Hayes,* 28 Colo. 110, 63 Pac. 311; *Cain v. Smith,* 117 Ga. 902, 44 S. E. 5; *North Tonawanda v. Western Trans. Co.,* 16 Abb. Pr., N. S. (N. Y.), 297; note 67, 28 Cyc. 1590.)

E. W. Whitcomb, for Respondent.

In the case at bar it was the purpose and intention of the village trustees to purchase the waterworks, system, rights and franchises of a local company for the sum of $30,000, and to expend in addition an amount not exceeding $15,000 in enlarging and extending the same, and an amount not exceeding $5,000 in the purchase of a site and the erection of a building thereon in which to keep the tools and supplies used and needed in maintaining and operating a water system, and in which it might have necessary quarters for making repairs and proper offices for the use of persons representing the city in the care and control of the plant.

Each of the three objects specified were dependent on the other two, and must in some way be secured before the city will have a complete waterworks system that can be maintained and operated practically and economically.

If the three objects enumerated in Ordinance No. 98, and for which the bonded indebtedness was to be incurred, were so connected as to constitute a complete plan or system, then only one proposition was involved, and only one question was required to be submitted at the special election held with reference to the approval or disapproval of said bond issue. (*Corker v. Village of Mountainhome, ante,* p. 32, 116 Pac. 108; *City of Oakland v. Thompson,* 151 Cal. 572, 91 Pac. 387; *People v. Counts,* 89 Cal. 15, 26 Pac. 612; *Stern v. City of Fargo,* 18 N. D. 289, 122 N. W. 403; *Cary v. Blodgett,* 10 Cal. App. 463, 102 Pac. 688; *State v. Wilder,* 200 Mo. 97, 98 S. W. 465; *Coleman v. Town of Eutaw,* 157 Ala. 327, 47 So. 703; *Kemp v. Town of Hazelhurst,* 80 Miss. 443, 31 So. 908; *Louisville v. Board of Park Commrs.,* 112 Ky. 409, 65 Pac. 860.)

The power to construct and maintain, or words of similar meaning, includes the power to purchase. (*Seymour v. Tacoma,* 6 Wash. 138, 32 Pac. 1077; *Dick v. Scarborough,* 73 S. C. 150, 53 S. E. 86; 2 Abbott on Mun. Corporations, sec. 457.)

A liberal construction must be given to a statute authorizing the issue of public improvements bonds, so as not to defeat the manifest object of the enactment, a substantial compliance only being required. (*City of Cheyenne v. State,* 17 Wyo. 90, 96 Pac. 244; *Edwards v. City of Cheyenne* (Wyo.), 114 Pac. 677.)

STEWART, C. J.—This action is brought by the appellant against the city of Salmon for the purpose of having determined the validity of a proposed issue of $50,000 of municipal bonds. It appears from the record that on January 3, 1911, the board of trustees of the then village of Salmon City (now city of Salmon) entered upon the proceedings of said board the following order: "The motion was made and seconded that it is the sense of the board to call an election for the purpose of voting bonds to acquire a city water plant and *to erect a city hall.* Carried." On January 3, 1911, the record further shows that the board of trustees of the village of Salmon City passed a resolution, which, among other

things, provided: "A resolution to take the initiatory steps
to issue the Municipal Coupon Bonds of the Village of Sal-
mon City, to the amount of Fifty thousand (50,000) Dollars,
for the purpose of acquiring by purchase the Water Works,
Water Rights, System and Franchises of the Salmon City
Water Company, Limited, which is now operated for the pur-
pose of conducting and delivering water and selling the same
to the inhabitants of the Village of Salmon City; and for the
further purpose of extending the said water works and sys-
tem; and for the further purpose of providing for *the pur-
chase, erection, construction and furnishing of a public build-
ing and building site for the use of the Village of Salmon
City.*

"Whereas, The Salmon City Water Company, Limited, a
corporation, is the owner of certain water works and water
rights, whereby water from Jesse Creek, County of Lemhi,
State of Idaho, is delivered and sold to the Village of Salmon
City, and the inhabitants thereof, for domestic and other
purposes.

"Whereas, it would be to the best advantage of the Village
of Salmon City, and the residents thereof, to have the said
water works, water rights, system and franchises owned by
the municipal corporation of the Village of Salmon City.

"Whereas, the said water works, water rights, system and
franchises can be purchased from said Salmon City Water
Company, Limited, for the sum of Thirty thousand (30,000)
Dollars.

"Whereas, the said water works and system are becoming
insufficient to supply the Village of Salmon City and the
inhabitants thereof with necessary water, and the said water
works and system should be extended and enlarged at an
approximate cost of fifteen thousand (15,000) Dollars.

"Whereas, the Village of Salmon City does not own a
municipal building of sufficient size to accommodate the offi-
cers and to take care of property belonging to the said Vil-
lage, *and has no lot of land upon which such building could
be constructed, and the cost of such site and building would
be approximately the sum of Five thousand (5,000) Dollars:*

"Now, Therefore: Be it Resolved, by the Chairman and the Board of Trustees of the Village of Salmon City:

"That it is deemed advisable by the said Chairman and Board of Trustees to issue municipal coupon bonds of the said Village of Salmon City in the sum of Fifty thousand (50,000) Dollars, such bonds to be issued and sold in the manner provided by law, and the proceeds thereof not to exceed the sum of Forty-five thousand (45,000) Dollars, to be used for the purchase, enlargement and extension of the water works, water rights, system and franchises of the Salmon City Water Company, Limited, *and the proceeds thereof in an amount not to exceed the sum of Five thousand (5,000) Dollars, to be used for the purchase, erection, construction and furnishing of a public building and building site for the use of the Village of Salmon City.*

"Be it further resolved: That an election should be called to be held on the 21st day of February, 1911, for the purpose of enabling the qualified electors of said Village to vote upon the proposition of issuing the said municipal coupon bonds in the sum of Fifty thousand (50,000) Dollars."

It further appears that Ordinance No. 98 was passed by the village of Salmon City, which in its terms provides:

"An ordinance to submit to the qualified electors of the Village of Salmon City, the question of incurring an indebtedness on the part of the said Village in the sum of Fifty thousand (50,000) Dollars, and issuing the Municipal Coupon bonds of the said Village in payment therefor, for the purpose of purchasing the water works, water rights and franchises of the Salmon City Water Company, Limited, and for the further purpose of extending and enlarging the same, and for the further purpose of providing for the purchase, erection, construction and furnishing of a public building and site for the use of said village; etc."

This ordinance, in section 2, specifies the purpose for which the bonds are proposed to be issued as follows:

"That it is the purpose and intention of the chairman and board of trustees of the Village of Salmon City to incur such indebtedness and issue such bonds in the total amount of Fifty

thousand (50,000) Dollars, Thirty thousand (30,000) Dollars of which shall be used for the purchase of the water works, water rights, system and franchises of the Salmon City Water Company, Limited, and that an amount not to exceed the sum of Fifteen thousand (15,000) Dollars of such indebtedness and bonds shall be used to enlarge and extend the said water works and water system, *and an amount not to exceed the sum of Five thousand (5,000) Dollars shall be used for the purchase, erection, construction and furnishing of a public building and building site for the use of such Village.*"

Notice of the election as provided for in Ordinance No. 98 was duly given, and specified the purpose for which it was proposed to issue such bonds as follows: "For the purpose of voting on the question of issuing the municipal coupon bonds of the Village of Salmon City to the amount of Fifty thousand (50,000) Dollars, to purchase the water works, water rights, franchises and other property of the Salmon City Water Company, to extend and improve the same, *and to provide for the purchase, erection, construction and furnishing of a building and building site for the use of such Village.*"

At such election the following form of ballot was used:

"OTHER QUESTION.

| MUNICIPAL ELECTION, VILLAGE OF SALMON CITY, LEMHI COUNTY, IDAHO, FEBRUARY 21, 1911. | In favor of issuing bonds to the amount of Fifty Thousand Dollars ($50,-000.00) for the purposes stated in Ordinance No. 98. | YES. ◯ |
| | Against issuing bonds to the amount of Fifty Thousand Dollars ($50,-000.00) for the purposes stated in Ordinance No. 98." | NO. ◯ |

The vote at such election was in favor of the issuing of said bonds, and the trial court held that the procedure was legal and was in accordance with law, and that the proposed issue of said bonds was in all respects valid and legal.

The important, and, in our opinion, the controlling, question in this case is: Are the proceedings of the board of trustees of the village of Salmon City void and in violation of secs. 2315 and 2316 of the Rev. Codes, in that separate and distinct propositions, or more than one proposition, were submitted to be voted upon as a single proposition, and voted upon at such election as a single proposition?

Sec. 2315 of the Rev. Codes grants to cities and towns incorporated under the laws of this state the power and authority to issue municipal coupon bonds for certain municipal purposes, and specifically enumerates such purposes, while sec. 2316 of the Rev. Codes provides: "Whenever the common council of such city or the trustees of such town or other legislative body of any such city or town, shall deem it advisable to issue the coupon bonds of such city or town for any of the purposes aforesaid, the mayor or common council of such city or the trustees of such town shall provide therefor by ordinance, which shall specify the purpose of issuing such proposed bonds. . . . . "

It will thus be seen by the provisions of the statute the ordinance should specify the purpose or purposes described in section 2315. By an examination of sec. 2315 we find that the purposes for which municipal coupon bonds may be issued are divided into eight different subjects. Subd. 1 provides: "To provide for the construction and maintenance of necessary water works and supplying the same with water, and to provide lights for streets, public buildings and grounds."

Subd. 7 provides: "To provide for the purchase, erection, construction, and furnishing of public buildings and building sites for the use of such city or town."

Thus the statute designates a proposed issue of municipal bonds for the construction and maintenance of waterworks as a single and separate and distinct purpose for which such bonds are to be issued, and in like manner designates a pro-

posed issue of bonds for the purchase and construction and furnishing of a public building and building site as a single, distinct and separate purpose for which municipal bonds may be issued. It is apparent that the council of the village of Salmon City in the resolutions that were passed by it and placed upon its records, and in the language of the ordinance also, perfectly understood the statute, and understood that the proposed issue of municipal bonds embraced at least two distinct purposes, each independent and separate from the other. In the resolution adopted on January 3d, the village trustees specifically referred to the proposed issue of bonds, that the same were for the purpose of acquiring a city water plant and the erection of a city hall; and in the subsequent resolution on the same date, the purpose of issuing such bonds for the erection, construction and furnishing of a public building and building site is designated and distinguished as independent and separate from the purpose of purchasing and constructing waterworks; and in Ordinance No. 98 the language shows that the village council looked upon the purpose for which it was proposed to issue municipal bonds as embracing at least two separate and distinct purposes, and distinguishes separately the proportion of the bonds to be devoted to each of such purposes.

Notwithstanding the statute and the intention of the board of trustees of the village, as shown by the resolutions and ordinance adopted by the board, there was but one question submitted to the voters of the village of Salmon City, and voters were given opportunity to vote only for or against the aggregate proposed issue of bonds. The proposition to vote bonds for the purchase and construction of waterworks and a water system was combined with the proposition to vote bonds for a municipal building, and the voter had no choice, and could only by his ballot approve the proposed issue for the combined purposes or reject the same.

It was clearly the intention of the legislature in enacting secs. 2315 and 2316 to prohibit municipal authorities from creating a debt for municipal purposes and from issuing

municipal bonds, unless authorized by the voters of the municipality, voting at an election held for that purpose. By the provisions of Ordinance No. 98 under consideration in this case, and the ballot provided for the voters at the municipal election held for the purpose of authorizing the bonds now under consideration, no opportunity was given the electors to express their wishes with reference to the issuing of bonds for any particular purpose, and the voters at such election have expressed no opinion, and were given no opportunity to express an opinion as to whether they might favor the purchase and construction of a water system and oppose the construction of a municipal building, or favor the issuing of bonds for the construction of a municipal building and oppose the purchase and construction of a water system. To combine these two propositions, distinct and independent as they are made by the provisions of sec. 2315, and as such propositions in fact are, without giving the voters an opportunity to express their will upon each separate proposition, is a clear evasion of the statute, and if permitted would practically nullify not only the statute, but make it possible for two or more propositions to be combined, and the voters of a municipality deceived and misled as to the objects and purposes for which the bond issue was proposed.

No doubt it often occurs that where several proposed improvements are to be paid for by bond issue, one or more may be favored by a majority of the voters, while others may be strongly opposed, and rather than defeat the proposition favored, the voter will be forced to accept the proposition which he honestly opposes, if different and distinct purposes could be incorporated in each separate submission. But where the subjects are different, and have no natural or necessary connection, and the questions submitted indicate different purposes, such questions cannot be submitted as one question, and this is specially true under the provisions of the statute which enumerates said purposes as independent and separate purposes. There is no provision in the statute which prohibits the submission of a number of propositions or questions at one time, providing such ordinance specifies

each separate question or proposition as such, and provision is made by which the voters are given opportunity to vote upon each specific proposition or question independent of the other questions submitted at the same time. This may be done upon a single ballot, but the ballot must state each proposition separately, so that the voter may be able to express his will with reference to each question. This is a rule clearly announced by this court in *Corker v. Village of Mountainhome, ante,* p. 32, 116 Pac. 108; *Platt v. City of Payette,* 19 Ida. 470, 114 Pac. 25; and is supported by the authorities. (*City of Denver v. Hayes,* 28 Colo. 110, 63 Pac. 311; *McBryde v. City of Montesano,* 7 Wash. 69, 34 Pac. 559; 28 Cyc. 590; *Clark v. City of Los Angeles* (Cal.), 116 Pac. 722.) The designation that $30,000 of the proposed bond issue would be used for the purchase of the water system of the Salmon City Water Company, and not to exceed $15,000 to be used to enlarge and extend said system, states one general purpose, that of acquiring and improving a water system for said city, and both relate to the same subject matter, and constitute but one purpose as defined by the statute, and might well be submitted as one proposition; but the construction of a municipal building, having no connection whatever with the acquiring or constructing of a water system, and not being a part of the same, should have been submitted as a separate and independent proposition, and for these reasons the judgment of the lower court is reversed, and a judgment ordered entered in accordance with this opinion.

There is one other question presented in the argument upon this appeal which is relied upon, which we deem proper to dispose of, inasmuch as the same question might be raised in case the proposed bond issue is again submitted. It is contended by the appellant that the municipality had no legal authority to purchase waterworks already constructed, or make the same a part of the municipal water system. This argument is based upon the provisions of subd. 1 of sec. 2315, Rev. Codes: "To provide for the construction and maintenance of necessary water works and supplying the same with water." It is urged that the word "construction" as used

in this subdivision will not authorize a municipality to purchase works already constructed. We think it was not intended by the legislature, by the language thus used, to prohibit a municipality from purchasing waterworks already constructed, and to make the same all, or a part of, a general water system for such municipality. The very fact that the municipality is authorized to provide for the construction and maintenance of necessary waterworks implies authority to purchase works already constructed, and to make the same all, or a part of, a general system of waterworks. This construction clearly appears when we take into consideration the provision of sec. 2238 of the Rev. Codes, which prescribes additional powers of cities and villages: Subd. 36. "Acquire, by purchase, or otherwise, water works or plants and illuminating plants, to supply the municipalities and the inhabitants thereof with water and light."

A municipality may have a water system owned and operated by private individuals or corporations, and such system may be inadequate to supply the demands of the municipality, or such system may be operated in such a manner as to be oppressive to the inhabitants of such municipality, and at the same time the municipality may be able to purchase such system at a less cost than a new system of equal adequacy could be constructed, and because of these facts and other facts, the city might conclude that it would be wise to purchase such system and make it all or a part of a general water system for the municipality; and it clearly was not intended by subd. 1 of sec. 2315 to limit a municipality in its power to purchase a water system.

In the case of *Seymour v. City of ·Tacoma,* 6 Wash. 138, 32 Pac. 1077, the supreme court of the state of Washington had under consideration the construction of an act of the legislature, the title of which read: "An act authorizing cities and towns to construct internal improvements, and to issue bonds, and pay therefor," and in the course of the opinion the court holds: "The real purpose of this act would have been better expressed had the word 'provide' been used, but we think the word 'construct,' under all the circumstances,

may be accorded a similar meaning, rather than defeat the operation of what is probably the most important feature of this law, upon the technical significance of a word, where it can hardly be contended that anyone was likely to be deceived,'' and in effect holds that the word ''construct'' includes the power to purchase in making such improvements. In the case of *Dick v. Scarborough,* 73 S. C. 150, 53 S. E. 86, the supreme court of South Carolina had under consideration a statute of that state which empowered the municipal authorities to provide for issuing bonds ''for the purpose of enlarging, extending or establishing water works,'' and says: ''It is true, power to hold an election to authorize the issuance of bonds to purchase waterworks is not given in this statute by use of the word 'purchase,' but 'establishing' municipal waterworks may be accomplished by purchase as well as by construction. Establishing waterworks obviously here means the acquirement and inauguration of a system of waterworks as a municipal enterprise and as municipal property by either construction or purchase.'' (*Clark v. City of Los Angeles* (Cal.), 116 Pac. 722.) So we conclude that subd. 1 of sec. 2315 of the Rev. Codes clearly authorizes a municipality to vote bonds for the purpose of constructing and maintaining necessary waterworks, either by construction or purchase.

The judgment in this case is *reversed,* and the trial court is directed to enter judgment in favor of the appellants. Costs awarded to the appellant.

Ailshie, J., concurs.