

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

JOHN BEN SHEPPERD
ATTORNEY GENERAL

May 13, 1948

Hon. L. A. Woods
State Superintendent
Department of Education
Austin, Texas

Attn.: Hon. T.M. Trimble
First Assistant

Opinion No. V-573

Re: Status of Edinburg
Junior College and
authority of a junior
college district to
vote bonds for pur-
chase of buildings.

Dear Sir:

We refer to your letter to which was attached
a letter signed by Mr. H. A. Hodges, Associate Director
of Edinburg Junior College, wherein inquiry is made
whether (1) the board of trustees of said junior college
may set up a separate junior college district to be gov-
erned by the board of trustees of the Edinburg Consoli-
dated Independent School District, and (2) whether a
junior college district may vote and issue bonds for the
purpose of purchasing school buildings as well as for
the construction or erection of same.

We are advised that the Edinburg Junior Col-
lege was created in 1927 in accordance with Section 7
of Senate Bill 276, Acts 1926, 39th Legislature, First
Called Session, Chapter 3, a special law validating the
creation of the Edinburg Consolidated Independent School
District. Section 7 provides that the board of trustees
of the said independent school district shall govern and
control the junior college so established. We assume for
purposes of this opinion that said junior college was
created and exists by virtue of full compliance with laws
applicable thereto.

Article 2815h, Sec. 16, Vernon's Civil Stat-
utes, enacted by the 41st Legislature, Acts 1929, Re-
gular Session, House Bill 10, Chapter 290, provides in
part:

"Any public junior college now or-
ganized and conducted in the State of
Texas which has been in actual operation
prior to January 1, 1929, or which is re-
cognized as a standard junior college by

the State Department of Education is hereby validated and may, by action of its board of trustees, choose to be governed by the provisions of this act (Chap. 290 of Acts 1929), and receive the privileges of the same, at any time that it may desire to do so." (Matter in parenthesis added).

See also Article 2815L (Small 1), Vernon's Civil Statutes.

In Opinion No. O-4198, at page 4, this office advised that as to certain junior colleges which existed prior to the enactment of Chapter 290 of the Forty-first Legislature, Regular Session, this law through the adoption of Section 16 thereof, in effect, empowered the boards of trustees of such junior colleges to create a junior college district by simple resolution, and that the ultimate effect of Section 15 is to create a junior college district.

We have not been apprised whether or not the board of trustees of Edinburg Junior College has adopted the provisions of said Section 16. If it has not acted as provided in Section 16, then Section 7 of Senate Bill 276 under which the college was created, provides that the college shall be governed by the board of trustees of the Edinburg Consolidated Independent School District. If it has or does act as provided in Section 16 and the college district so created (See A. G. Opinion No. O-4198) is now governed by the provisions of Chapter 290 of Acts 1929, as amended, then Article 2815h, Sec. 4, is applicable in the determination of what board or body shall control the district in question.

Article 2815h, Sec. 4, provides that the Board of Education of such independent school district shall be the governing body of such junior college district.

There being no law authorizing a junior college district whose boundaries are coincident with the boundaries of an independent school district to provide for a board of trustees comprised of persons other than the board members of the independent school district, no such authority exists in the independent school district board or in the voters of the district. Such power has not been delegated or prescribed by the Legislature.

However, a union junior college, a county junior college, or a joint county junior college (as distinguished from a junior college district established by an independent school district or city that has assumed control of its schools) is governed, administered and controlled by a board of seven junior college trustees elected from the junior college district by the qualified voters in said district. Secs. 20 and 4 of Article 2815h, Vernon's Civil Statutes.

With respect to your bond question, Section 1 of Article 2815h-3b, Vernon's Civil Statutes, enacted by the Fiftieth Legislature (Ch. 70, Acts 1947, R.S.), provides in part as follows:

"From and after the passage of this Act, the governing boards of all public Junior Colleges organized, created and established under the laws of Texas, in any manner, shall have the power to issue bonds for the construction and equipment of school buildings and the acquisition of sites therefor. . ." See also Section 7, Article 2815h, Vernon's Civil Statutes.

The authority of the governing boards of public junior college districts to issue negotiable bonds is thus limited to the purposes designated in the Act; namely, for the construction and equipment of school buildings and the acquisition of sites therefor. San Antonio Union Junior College District v. Daniel (Tex. Sup., Dec. 3, 1947), 206 S.W.(2d) 995.

The question thus presents itself as to whether bonds may be issued for the purchase of school buildings under a grant of power for the construction of such buildings. This question has never been squarely before the courts of this State. Therefore, we have had to resort to decisions of other jurisdictions in an effort to arrive at the correct conclusion.

In the case of Seymour v. City of Tacoma, 6 Wash. 138, 32 P. 1077, the Supreme Court of Washington had for consideration a statute which authorized the issuance of bonds for the construction of certain improvements. That court held that "construction" in the statute meant "provide," and that the city could issue bonds thereunder to purchase the improvements. We quote from the decision of the court as follows:

"The real purpose of this act would have been better expressed had the word 'provide' been used, but we think the word 'construct,' under all the circumstances, may be accorded a similar meaning, rather than to defeat the operation of what is probably the most important feature of this law, upon the technical significance of a word, where it can hardly be contended that any one was likely to be deceived. As the constitution has not indicated the degree of particularity necessary to express in its title the subject of an act, the courts should not embarrass legislation by technical interpretations based upon mere form or phraseology. The objections should be grave, and the conflict between the statute and the constitution palpable, before the judiciary should disregard a legislative enactment upon the sole ground that the double subject was not fully expressed in the title."

Similarly, the Supreme Court of Idaho in the case of Ostrander v. City of Salmon, 20 Idaho 153, 117 P. 692, held as follows:

"There is one other question presented in the argument upon this appeal which is relied upon, which we deem proper to dispose of, inasmuch as the same question might be raised in case the proposed bond issue is again submitted. It is contended by the appellant that the municipality has no legal authority to purchase waterworks already constructed, or make the same a part of the muncipal water system. This argument is based upon the provisions of subdivision 1, Sec. 2315, Rev. Codes: 'To provide for the construction and maintenance of necessary waterworks and supplying the same with water.' It is urged that the word 'construction' as used in this subdivision will not authorize a municipality to purchase works already constructed. We think it was not intended by the Legislature, by the language thus used, to prohibit a municipality from purchasing waterworks already constructed and to make the

same all or a part of a general water sys-
tem for such municipality. The very fact
that the municipality is authorized to pro-
vide for the construction and maintenance
of necessary waterworks implies authority
to purchase works already constructed, and
to make the same all, or a part of, a gen-
eral system of waterworks."

It is seen that both these decisions hold, in
effect, that the authority to issue bonds for the con-
struction of improvements includes also the purchase of
such improvements. Similarly, it is stated in McQuillan
on Municipal Corporations, Section 2438, that "express
power to issue bonds to provide for the 'construction
and maintenance' of waterworks includes power to issue
bonds to purchase existing waterworks."

And the Supreme Court of the United States in
the case of Swigart v. Baker, 229 U.S. 193, 57 L. Ed.
1146, 33 Sup. Ct. 646, states the following:

". . . Permission to 'construct in-
ternal improvements' warranted the pur-
chase of a plant already built . . ."
(citing with approval the Seymour case.)

See also State v. Thompson (Mo.), 53 S.W.(2d)
273.

Although we fully recognize that there are
decisions of other states which may be in conflict with
this principle, the courts of Texas have definitely in-
dicated that the rule of law announced by the Washington
and Idaho courts is the one which will be followed here.
In the case of Galveston Theatres, Inc. v. Larsen, 124
S.W.(2d) 936, the Galveston Court of Civil Appeals in
determining the sufficiency of the word "constructed" in
a special issue submitted to the jury held that the same
meant "provide." The court cited with approval the above
quoted Seymour case.

And in the case of City of Dayton v. Allred,
123 Tex. 60, 68 S.W.(2d) 172, our Supreme Court had for
consideration the provisions of Article 1112, Vernon's
Civil Statutes, which prohibits the incumbering of a
city utility system for more than $5,000, except for pur-
chase money or to refund existing indebtedness, unless
authorized by a majority vote of the qualified voters

of the city. The court held that construction money was the same as purchase money. We quote from the decision as follows:

". . . It is then further specifically provided that such system shall not be incumbered for more than $5,000, except for purchase money, etc., without such vote.

"In the instant case the City of Dayton has no sewer system and expects to use the money derived from the sale of these bonds in the construction, acquisition, and completion of such a system. It is our opinion that such a record justifies the conclusion that, in so far as the proposed sewer system here involved is concerned, the mortgage thereon is for purchase money within the meaning of Article 1112. While it is for more than $5,000, being for purchase money, it is not required by this statute that a vote be had." (Emphasis added)

Although neither of these cases directly answers the question which you ask, it is our opinion that the courts have followed the principle that statutory authority to issue bonds to construct public improvements includes the authority to issue bonds to purchase such improvements unless the statute would indicate otherwise.

It seems clear to us that this principle is wholly in consonance with the legislative intent, which, after all, is the final and ultimate goal to reach in all questions of statutory construction. For example, suppose the situation where a junior college district could purchase a building entirely suitable for school purposes; however, if it were compelled to build the same type of building, the cost would be much greater than the purchase price of the building that had been offered. Could it be said that the Legislature would have intended that the district would have to construct the building, rather than effect a substantial saving by purchasing a building already constructed? The answer is obvious. It is our opinion that the Legislature, by the language "construction and equipment of school buildings and the acquisition of sites therefor," meant that the governing board of a junior college district could provide a school plant for the district, and

that this could be accomplished either by the construction or purchase of school buildings.

## SUMMARY

If the board of trustees of Edinburg Junior College has adopted, or does adopt, the provisions of Section 16, Article 2815h, Vernon's Civil Statutes, the effect thereof is to create a junior college district. Attorney General's Opinion No. 0-4198.

Texas public junior college districts may vote and issue bonds for the purchase of buildings already constructed to be used for school purposes. Arts. 2815h and 2815h-3b, V. C. S.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

Chester E. Ollison
Assistant

George W. Sparks
Assistant

CEO:GWS:s:bb:mw

APPROVED:

Price Daniel
ATTORNEY GENERAL