BOISE CITY, IDAHO, v. BOISE ARTESIAN HOT & COLD WATER CO., Limited.

(Circuit Court of Appeals, Ninth Circuit. February 6, 1911.)

No. 1,875.

1. FRANCHISES (§ 2*)—SPECIAL PRIVILEGES—GRANT.
   Franchises and special privileges must be construed most strongly against the grantee and in favor of the government.
   [Ed. Note.—For other cases, see Franchises, Cent. Dig. § 2; Dec. Dig. § 2.*]

2. MUNICIPAL CORPORATIONS (§ 58*)—DELEGATION OF POWER—CONSTRUCTION.
   Legislative grants of power to municipal corporations must be strictly construed to operate as a surrender of the sovereignty of the state no further than is expressly declared by the language thereof.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 145–147; Dec. Dig. § 58.*]

3. MUNICIPAL CORPORATIONS (§ 682*)—CHARTER—FRANCHISE—GRANT—EXTENT.
   Where the charter of a city authorized it to grant the use of its streets for the laying of water mains to supply its inhabitants, the city was only authorized to grant such use for a reasonable time and could not grant a perpetual franchise under the rule that a municipal corporation may not irrevocably surrender any part of its power to control its pub-

lic streets by contract or otherwise without the express consent of the Legislature.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1469; Dec. Dig. § 682.*]

4. MUNICIPAL CORPORATIONS (§ 682*)—WATERWORKS COMPANY—FRANCHISE—CONSTRUCTION—TERM—LICENSE FEE—STATUTES.

Rev. St. Idaho 1887, § 2710, provides that no corporation formed to supply a city with water may do so unless previously authorized by ordinance or unless done in conformity with a contract between the corporation and the city or town, and that such contract shall not deprive the city or town of the right to regulate rates, nor shall any exclusive right be granted or contract or grant made for a term exceeding 50 years. *Held* that, where a city granted a franchise to defendant's predecessors to use the streets for the construction of a water system without specifying any term for the continuance of the grant, it was not a grant for 50 years, but a mere license revocable by the city at will, and hence did not deprive the city of the right thereafter to impose on defendant payment of a monthly license fee for the use of the streets.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1470; Dec. Dig. § 682.*]

In Error to the Circuit Court of the United States for the Central Division of the District of Idaho.

Action by Boise City, Idaho, against the Boise Artesian Hot & Cold Water Company, Limited. Judgment for defendant, and plaintiff brings error. Reversed, with directions.

The plaintiff in error was plaintiff in the court below, where it brought the action to recover from the defendant certain license fees imposed by one of its ordinances, enacted in 1906. The facts of the case are undisputed. They show, among other things, that the plaintiff in error is a municipal corporation operating under a special charter granted by the Legislature of the territory of Idaho during the year 1863, and subsequent amendments thereto; that on the 3d day of October, 1889, the city enacted an ordinance entitled "An ordinance granting Eastman, Brothers the right to lay water pipes in Boise City," the only two sections of which ordinance are as follows:

"Section 1. H. B. Eastman and B. M. Eastman, and their successors in interest in their waterworks for the supplying of mountain water to the residents of Boise City, are hereby authorized to lay and repair their water pipes in, through, and along and across the streets and alleys of Boise City, under the surface thereof; but they shall at all times restore and leave all streets and alleys in, through, along, and across which they may lay such pipes, in as good condition as they shall find the same, and shall at all times promptly repair all damage done by them or their pipes, or by water escaping therefrom.

"Sec. 2. This ordinance shall take effect from and after its passage and approval." Approved October 3, 1889.

The Artesian Water & Land Improvement Company having become organized as a corporation under the laws of the state of Idaho for the purpose of supplying Boise City and its inhabitants with water for public and family use, the city, on the 10th day of July, 1890, enacted an ordinance entitled "An ordinance granting to the Artesian Water & Land Improvement Company the right to lay water pipes in Boise City," the three sections of which are as follows:

"Section 1. The privilege of laying down and maintaining water pipes in the streets and alleys now laid out or hereafter to be laid out and dedicated in Boise City, Idaho, is hereby granted to the Artesian Water & Land Improvement Company, its successors or assigns.

"Sec. 2. All water pipes placed in said streets and alleys shall be laid down in a workmanlike manner, and all excavations made for pipes shall be properly filled, and with all convenient speed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

"Sec. 3. This ordinance shall take effect and be in force from and after its passage." Approved July 10, 1890.

Immediately after the enactment of the ordinance in their favor, Eastman Bros. proceeded to construct a system of waterworks, consisting of artesian wells and reservoirs, and laid mains and pipes under and along the streets and alleys of Boise City, and to supply the city and its inhabitants with pure mountain water, in accordance with that ordinance, expending in such construction over $20,000 to the time they sold their interest therein to an Idaho corporation called the Artesian Hot & Cold Water Company, Limited, hereinafter mentioned.

Immediately after the enactment of the ordinance in favor of the Artesian Water & Land Improvement Company, it proceeded to sink artesian wells, construct reservoirs, and lay pipes under and along the streets of the city **and to supply** the city and its inhabitants with pure, fresh water for municipal, domestic, and irrigation purposes, under and pursuant to the aforesaid ordinance in its favor, expending in the construction, extension, and improvement of its waterworks more than $50,000 up to the time of its sale thereof to the aforesaid Artesian Hot & Cold Water Company, Limited, as hereinafter mentioned.

The Artesian Hot & Cold Water Company, Limited, was organized under the laws of the state of Idaho, and was authorized by its articles of incorporation to supply the plaintiff in error and its inhabitants with water for municipal and domestic uses, and to purchase and acquire the waterworks, wells, reservoirs, pipe lines, properties, rights, and franchises of both the Eastman Bros. and the Artesian Water & Land Improvement Company, which purchase was effected on the 28th day of March, 1891.

The defendant in error is a corporation organized and existing under the laws of the state of West Virginia, with its principal place of business at Boise City, Ada county, Idaho. Its articles of incorporation authorize it to carry on "a waterworks system, and to sell and rent water to the inhabitants of the said Boise City and to take, purchase, acquire, hold, operate, and maintain rights and privileges of water companies, associations, or corporations, and to acquire, use, own, and operate all properties, franchises, rights, claims, privileges, and everything belonging to that certain corporation known as the Artesian Hot & Cold Water Company, Limited, and to be the successor in every respect of said corporation."

On the 28th day of August, 1901, the defendant in error acquired by purchase from the Artesian Hot & Cold Water Company, Limited, all of its rights in and to both of the water systems mentioned, and all of its said waters, as well as all of the rights and privileges granted by the aforesaid ordinances.

The record further shows: That between the 28th day of March, 1891, and the 28th day of August, 1901, the Artesian Hot & Cold Water Company, Limited, supplied the city and its inhabitants with pure, fresh water for municipal, domestic, and other useful purposes, and that during that period the population of the city increased from about 3,000 to about 6,000 people, the area of the city being enlarged by the laying out and platting of additions thereto, which were settled upon and occupied, and during which period the Artesian Hot & Cold Water Company, with the city's knowledge and consent, extended its pipe lines under the streets and alleys of the city from time to time, and supplied such additions with water to meet the demands upon it, and laid about 15 miles of additional pipe, constructed two wells and one reservoir for cold water, and erected a large steam pumping plant with a capacity of 3,000,000 gallons a day, aggregating in cost more than $192,000. That at all times since the 28th day of August, 1901, the defendant in error has supplied the city and its inhabitants "by virtue of said ordinance and laws, and with plaintiff's knowledge, acquiescence, and consent, pure fresh water for municipal, domestic, and other useful purposes, in accordance with said ordinances, and in full compliance therewith, and with said laws of Idaho. That since said last-named date the population of Boise City has increased from about 6,000 to over 25,000 inhabitants, and this defendant, with plaintiff's knowledge, acquiescence, and consent, has extended its cold water system to meet the growth of said city, and has laid over 30 miles of

additional mains under the streets and alleys of said city, constructed numerous wells and galleries, acquired by condemnation proceedings additional land for the development of an increased water supply, installed four electric pumps of an aggregate capacity of six and one-half million gallons of water per day, and has expended in the improvement and extension of said cold water system an additional sum of more than $140,000. That the defendant and its predecessors in interest in and to its waterworks system are now and ever since the 3d day of October, 1889, have been using the streets and alleys of said Boise City in the sale and delivery of water to the plaintiff, and residents and inhabitants of Boise City, through the water mains of said waterworks systems, and in the laying and repairing of said water pipes connected with said waterworks systems."

On the 7th day of June, 1906, the plaintiff in error enacted an ordinance, the first and fourth sections of which are as follows:

"Section 1. That the said Boise Artesian Hot & Cold Water Company, a private corporation organized and existing under and by virtue of the laws of the state of West Virginia, the successors in interest of the said H. B. Eastman and B. M. Eastman in and to said waterworks now being operated under said license granted by said ordinance of October 3d, 1889, in said Boise City, are hereby required to hereafter pay to said Boise City on the first day of each and every month, a monthly license fee of $300.00, for the privilege granted by said ordinance of October 3d. 1889, to lay and repair water pipes in the streets and alleys of said city through which water is being furnished to the inhabitants of said Boise City by said company. * * *

"Sec. 4. That nothing in this ordinance shall be construed or understood as granting any privilege or authority for any other term than that provided for in the aforesaid ordinance of October 3d, 1889."

The action was brought to recover the aggregate amount of three years' license fees so imposed, and which the defendant refused to pay after demand made.

The court below held that the ordinance of July 10, 1890, to the Artesian Water & Land Improvement Company, its successors and assigns, having been accepted and acted upon by the grantee and its successors, created a franchise for 50 years, and that the imposition of the license tax provided for by the ordinance of June 7, 1906, was an impairment of such franchise and therefore void. Judgment followed accordingly, and the city brought this writ of error.

Frank B. Kinyon and Cavanah & Blake, for plaintiff in error.
Richard H. Johnson, for defendant in error.

Before ROSS and MORROW, Circuit Judges, and HANFORD, District Judge.

ROSS, Circuit Judge (after stating the facts as above). It will be seen from the foregoing statement that the trial court held in effect that the ordinance of July 10, 1890, granted to the Artesian Water & Land Improvement Company, one of the predecessors in interest of the defendant in error, a franchise to use the streets and alleys of the city for the purpose of supplying it and its inhabitants with water for the period of 50 years. If that be so, then manifestly the attempted imposition by the ordinance of June 7, 1906, of the license fees in question was of no effect. The court below held that the fact that the plaintiff in error was incorporated and exists under a special charter does not render inapplicable to it the provisions of section 2710 of the Revised Statutes of Idaho of 1887, and that the provisions of that section should be read into the ordinance of July 10, 1890, as a part thereof, and thereby fixed the life of the franchise or privilege granted by that ordinance at 50 years.

Section 2710 of the state statutes so referred to reads as follows:

"No corporation formed to supply any city or town with water must do so unless previously authorized by an ordinance of the authorities thereof, or unless it is done in conformity with a contract entered into between the city or town and the corporation. Contracts so made are valid and binding in law, but do not take from the city or town the right to regulate the rates for water, nor must any exclusive right be granted. No contract or grant must be made for a term exceeding fifty years."

We are unable to give to this statute the effect attributed to it by the court below. Its terms and purposes, we think, seem quite plain. Every corporation formed to supply any city or town of the state with water is thereby prohibited from doing so unless previously authorized by an ordinance of the authorities thereof, or unless done in conformity with a contract entered into between such city or town and the corporation. Such contracts are authorized by the statute, subject to the express provision that they shall not take from the city or town the right to regulate the rates for water, nor, further expressly declares the statute, shall any exclusive right be granted, nor shall any such contract or grant be made for a term exceeding 50 years.

This is very far from saying that no such contract or grant shall be made for a shorter period than 50 years. It fixes a maximum beyond which no contract or grant is permitted to extend, but leaves the matter of time, within that limit, to be fixed by contract or by grant of the municipality.

In the case of Water Co. v. Knoxville, 200 U. S. 22, 33, 26 Sup. Ct. 224, 227 (50 L. Ed. 353), the Supreme Court said:

"'Grants of franchises and special privileges are always to be construed most strongly against the donee, and in favor of the public.' Such were the words of this court in Turnpike Co. v. Illinois, 96 U. S. 63, 68 [24 L. Ed. 651]. The universal rule in doubtful cases—this court said in Oregon Railway Co. v. Oregonian Ry. Co., 130 U. S. 1, 26 [9 Sup. Ct. 409, 32 L. Ed. 837]—is that 'the construction shall be against the grantee and in favor of the government.' As late as Coosaw Mining Co. v. South Carolina, 144 U. S. 550, 562 [12 Sup. Ct. 689, 36 L. Ed. 537], this court said: 'The doctrine is firmly established that only that which is granted in clear and explicit terms passes by a grant of property, franchises, or privileges in which the government or the public has an interest. Statutory grants of that character are to be construed strictly in favor of the public, and whatever is not unequivocally granted is withheld; nothing passes by mere implication. This principle, it has been said, is a wise one, as it serves to defeat any purpose concealed by the skillful use of terms to accomplish something not apparent on the face of the act, and thus sanctions only open dealing with legislative bodies.' Slidell v. Grandjean, 111 U. S. 412, 438 [4 Sup. Ct. 475, 28 L. Ed. 321]. We have never departed from or modified these principles, but have reaffirmed them in many cases. It is true that the cases to which we have referred involved in the main the construction of legislative enactments. But the principles they announce apply with full force to ordinances and contracts by municipal corporations in respect of matters that concern the public. The authorities are all agreed that a municipal corporation, when exerting its functions for the general good. is not to be shorn of its powers by mere implication. If by contract or otherwise it may, in particular circumstances, restrict the exercise of its public powers, the intention to do so must be manifested by words so clear as not to admit of two different or inconsistent meanings."

Turning to the ordinance of July 10, 1890, it is seen that it only granted to the Artesian Water & Land Improvement Company, one of the predecessors in interest of the defendant in error, the privilege

of laying down and maintaining water pipes in the streets and alleys then laid out in Boise City or thereafter to be laid out and dedicated, with provisions for the proper performance of the work with reasonable diligence. In effect the provisions of that ordinance were precisely similar to those of the previous ordinance of October 3, 1889, granting to the Eastman Bros., also predecessors in interest of the defendant in error, similar rights, which were held by this court in the case of Boise City Artesian Hot & Cold Water Co. v. Boise City, 123 Fed. 232, 59 C. C. A. 236, to have conferred on the Eastmans a license merely, revocable at the pleasure of the city; we there saying:

"The ordinance of October, 1889, granted permission to the Eastmans and to their successors in interest to lay and repair their pipes in the streets of the city, and to furnish water to the inhabitants thereof. No term was fixed for the duration of the privilege, and no contract was in terms made between the city and the grantees of the privilege. It is plain that the ordinance was either the grant of a license revocable at the will of the grantor, or, by its acceptance on the part of the grantee, it became an irrevocable and perpetual contract. No middle ground is tenable between these two constructions. In the Constitutions of nearly all the states it is provided that no exclusive or perpetual franchises shall be granted, and, irrespective of such constitutional limitation, it is clear, both upon reason and authority, that no municipal corporation, in the absence of express legislative authority, has power to grant a perpetual franchise for the use of its streets. The city of Boise was incorporated by the territorial Legislature of Idaho on January 11, 1866. It was given power 'to provide the city with good and wholesome water,' and to erect or construct 'such waterworks and reservoirs within the established limits of the city as may be necessary or convenient therefor.' There can be no doubt that under this provision of its charter the city had the power to grant the use of its streets for a fixed reasonable period of time, either to an individual or to a corporation, for the purpose of furnishing a water supply to the inhabitants. It had no authority, however, to make a perpetual contract. A municipal corporation intrusted with the power of control over its public streets cannot, by contract or otherwise, irrevocably surrender any part of such power without the explicit consent of the Legislature. Cooley's Constitutional Limitations (2d Ed.) 205, 210; Dillon on Municipal Corporations, §§ 715, 716; Barnett v. Denison, 145 U. S. 135, 139, 12 Sup. Ct. 819, 36 L. Ed. 652. And legislative grants of powers to municipal corporations are to be so strictly construed as to operate as a surrender of the sovereignty of the state no further than is expressly declared by the language thereof. Charles River Bridge Co. v. Warren Bridge. 11 Pet. 426, 9 L. Ed. 773, 938; Syracuse Water Co. v. City of Syracuse, 116 N. Y. 167, 22 N. E. 381, 5 L. R. A. 546; Long Island Water Supply Co. v. Brooklyn, 166 U. S. 685, 696, 17 Sup. Ct. 718, 41 L. Ed. 1165: Stein v. Bienville Water Supply Co., 141 U. S. 67, 11 Sup. Ct. 892, 35 L. Ed. 622. From these principles and authorities it follows that the Eastmans were given no exclusive or perpetual right, and that the ordinance operated to grant them a license only, and left the city free at any time to revoke the privilege granted, or to put in its own waterworks, or to grant a franchise to another company. The most that the licensees could claim under it was that it legalized their use of the streets for supplying water, and gave them permission to occupy the same until such time as the city might see fit to terminate the privilege."

If a revocable license only, it does not seem to be questioned that the city might either terminate the license, or impose a license fee as a condition of its continued enjoyment.

It results from what has been said that the judgment must be and is reversed, with directions for further proceedings in accordance with the views here expressed.