(December 2, 1918.)

W. A. BRADBURY, Appellant, v. CITY OF IDAHO FALLS, a Municipal Corporation, et al., Respondents.

[177 Pac. 388.]

Municipal Corporations—Bonds—Statutory Construction.

1.  The power of municipalities to issue bonds must be found in a legislative enactment. It is a grant of authority from the state and must be construed with strictness against the grantee.

2.  A statute authorizing any city or village to issue and sell bonds for the purpose of providing necessary funds to pay the cost of acquiring, by purchase or otherwise, a waterworks plant and a water supply and to construct, enlarge, extend, repair, alter and improve such plant; also to issue bonds in sufficient amount to acquire, by purchase or otherwise, a light and power plant does not authorize such municipality to issue and sell bonds for the purpose of providing necessary funds to pay the cost of enlarging, extending, repairing, altering and improving a light and power plant which it owns.

[As to purpose for which municipal bonds may issue, see note in 59 Am. St. 849.]

APPEAL from the District Court of the Ninth Judicial District, for Bonneville County. Hon. James G. Gwinn, Judge.

Action to enjoin the issuance and sale of municipal bonds. Judgment for defendants. *Reversed.*

Otto E. McCutcheon, for Appellant.

Grants of power to municipal corporations are to be strictly construed, and such corporations possess only such powers as are expressly conferred or necessarily implied. Doubts as to the existence of a power are resolved against the corporation. (2 Sutherland on Statutory Construction, sec. 551, p. 1027, and cases cited in notes; 1 Dillon on Municipal Corp., sec. 237, p. 449, and cases cited in notes; 2 Dillon on Municipal Corp., sec. 883, p. 1357; *State v. Frederic,* 28 Ida. 709, 155 Pac. 977; *City of Ogden City v. Bear Lake & River W. W. & Irr. Co.,* 16 Utah, 440, 52 Pac. 697, 41 L. R. A. 305; *Farwell v. City of Seattle,* 43 Wash. 141, 10 Ann. Cas. 130, 86 Pac. 217; *State v. Superior Court,* 93 Wash. 267, 160 Pac. 755, L. R. A. 1917B, 354; *State v. Temple,* 99 Neb. 505, 156 N. W. 1063; *Oro Electric Corp. v. Railroad Commission,* 169 Cal. 466, 147 Pac. 118; *State v. Edwards,* 40 Mont. 287, 20 Ann. Cas. 239, 106 Pac. 695; *Sharkey v. Butte,* 52 Mont. 16, 155 Pac. 266; *People v. Oak Park,* 268 Ill. 256, 109 N. E. 11; *City of Independence v. Cleveland,* 167 Mo. 384, 67 S. W. 216; Pond on Public Utilities, sec. 1, p. 13; *City of Savanna v. Robinson,* 81 Ill. App. 471; *Boise City v. Boise Artesian H. & C. Water Co.,* 186 Fed. 705, 108 C. C. A. 523; *Detroit Citizens' Street Ry. Co. v. Detroit,* 110 Mich. 384, 64 Am. St. 350, 68 N. W. 304, 35 L. R. A. 859.)

The implied powers of a municipal corporation must be essential to the exercise of the express powers and not merely convenient thereto, and the intent of the legislature to confer them must be clear. (*People v. Western New York & Pa. Traction Co.,* 214 N. Y. 526, 108 N. E. 847.)

Where a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others. (2 Sutherland on Statutory Construction, sec. 493, p. 921; 1 McQuillin on Municipal Corp., sec. 343, p. 762; *Long Beach v. Boynton,* 17 Cal. App. 290, 119 Pac. 677; *People v. Oak Park,* 268 Ill. 256, 109 N. E. 11.)

"Where general words follow an enumeration of particular things, such words must be held to include only such things or objects as are of the same kind as those specifically mentioned." (2 Sutherland on Statutory Construction, sec. 422, p. 814; 1 McQuillin on Municipal Corporations, sec. 344, p. 764; *Gundling v. Chicago,* 176 Ill. 340, 52 N. E. 44, 48 L. R. A. 230; *Nichols v. State,* 127 Ind. 406, 26 N. E. 839.)

Charter power to issue bonds to construct a public improvement does not include power to issue bonds to repair such improvement, at least, unless the repairs are absolutely necessary to preserve the plant. (*Neacy v. Milwaukee,* 142 Wis. 590, 126 N. W. 8; *State v. Wilder,* 200 Mo. 97, 98 S. W. 465; *Long Beach v. Boynton, supra.*)

E. M. Holden, for Respondents.

"The strictness, then, to be observed in giving construction to municipal charters, should be such as to carry into effect every power clearly intended to be conferred on the municipality, and every power necessarily implied, in order to a complete exercise of the power granted." (1 McQuillin on Municipal Corporations, sec. 354, p. 789; 2 Sutherland on Statutory Construction, sec. 500, p. 933.)

"The general words are not to be rejected, and the maxim *ejusdem generis* must yield to the maxim that every part of a statute should be upheld and given its appropriate effect, if possible." (2 Sutherland on Statutory Construction, sec. 437, p. 835; *National Bank of Commerce v. Ripley,* 161 Mo. 126, 61 S. W. 587; *State v. Woodman,* 26 Mont. 348, 67 Pac. 1118; *Ex parte Smith,* 231 Mo. 111, 132 S. W. 607.)

Municipalities in Idaho, under chapter 16, Laws of 1917, have the implied power to incur an indebtedness and issue bonds, to enlarge, extend, repair, alter and improve an in-

adequate electric light and power plant already owned by a
municipality, as an incident to its power to acquire an
adequate electric light and power plant.   (*State ex rel. Fre-
mont v. Babcock,* 25 Neb. 500, 41 N. W. 450; *Brown v.
Graham,* 58 Tex. 254; *Butler v. Andrus,* 35 Mont. 575, 90
Pac. 785; 2 Sutherland on Statutory Construction, sec. 682,
p. 1244; *Overall v. Madisonville,* 125 Ky. 684, 102 S. W. 278,
12 L. R. A., N. S., 433; *Chandler v. Seattle,* 80 Wash. 154,
141 Pac. 331; *Forrest City v. Bank of Forrest City,* 116 Ark.
377, 172 S. W. 1148; *Edwards v. City of Cheyenne,* 19 Wyo.
110, 114 Pac. 677, 682, 122 Pac. 900; *Clark v. City of Los
Angeles,* 160 Cal. 31, 116 Pac. 722; *Seymour v. City of
Tacoma,* 6 Wash. 138, 32 Pac. 1077; *Maxcy v. Oshkosh,* 144
Wis. 238, 128 N. W. 899, 1138, 31 L. R. A., N. S., 787; *Linn
v. Omaha,* 76 Neb. 552, 107 N. W. 983; *People v. Seaman,* 59
App. Div. 76, 69 N. Y. Supp. 55; *Dick v. Scarborough,* 73
S. C. 150, 53 S. E. 86; *Morse v. Granite County,* 44 Mont. 78,
119 Pac. 286; *Jack v. Grangeville,* 9 Ida. 291, 74 Pac. 969;
*Ostrander v. City of Salmon,* 20 Ida. 153, 117 Pac. 692.)

MORGAN, J.—It appears from the pleadings and from a
stipulation of facts, submitted to the district court in lieu of
evidence, that the city council of Idaho Falls passed an ordi-
nance declaring it to be necessary and advisable for the city
to incur an indebtedness; and to issue bonds, in the sum of
$35,000, for the purpose of providing necessary funds to pay
the cost of acquiring an adequate electric light and power
plant "by enlarging, extending, repairing, altering and im-
proving" the plant it owned.   Pursuant to the ordinance an
election was held which resulted in favor of the indebtedness
being incurred and the bonds being issued for the purpose
above ·stated.

This action was commenced by a taxpayer to procure an
injunction restraining the city, its officers and agents, from
consummating the issuance and sale of the bonds.   A judg-
ment of dismissal was entered from which this appeal is
prosecuted.

The one question presented is as to the right of the city to issue and sell bonds to raise funds for the purpose of providing an adequate electric light and power plant by enlarging, extending, repairing, altering and improving one it now owns.

The power of municipalities to issue bonds must be found in a legislative enactment. Such an enactment is a grant of authority from the state to the municipality and must be construed with strictness against the grantee. The rule is thus stated in Dillon on Municipal Corporations, 5th ed., vol. 1, sec. 237: "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. . . . . " (*State v. Superior Court*, 93 Wash. 267, 160 Pac. 755, L. R. A. 1917B, 354; *City of Independence v. Cleveland*, 167 Mo. 384, 67 S. W. 216; *State v. Temple*, 99 Neb. 505, 156 N. W. 1063; *Sharkey v. City of Butte*, 52 Mont. 16, 155 Pac. 266; *People v. Western etc. Traction Co.*, 214 N. Y. 526, 108 N. E. 847; *Farwell v. City of Seattle*, 43 Wash. 141, 10 Ann. Cas. 130, 86 Pac. 217; *State v. Wilder*, 200 Mo. 97, 98 S. W. 465; *Boise City v. Boise Artesian H. & C. Water Co.*, 186 Fed. 705, 108 C. C. A. 523.)

The law of this state which grants to cities and villages authority to issue bonds in cases of this kind is to be found in Rev. Codes, sec. 2315. That section has been frequently amended since the codification of our laws in 1908, and the portion of it relating to waterworks and light and power plants, as it was prior to the 1917 amendment, appears in Sess. Laws 1915, chap. 44, p. 130, as follows:

"Every city, town or village, incorporated under the laws of the Territory of Idaho or of the State of Idaho shall have power and authority to issue municipal coupon bonds in a

sufficient amount to acquire, by purchase or otherwise, a waterworks plant for such municipality and a water supply therefor.

"Every city, town or village, incorporated under the laws of the Territory of Idaho or of the State of Idaho, shall have power and authority to issue municipal coupon bonds in a sufficient amount to acquire, by purchase or otherwise, a light and power plant for such municipality."

Sec. 2315 was last amended in Sess. Laws 1917, chap. 16, p. 43, and now provides:

"Every city, town or village, incorporated under the laws of the Territory of Idaho or of the State of Idaho shall have power and authority to issue municipal coupon bonds in a sufficient amount to acquire, by purchase or otherwise, a waterworks plant for such municipality and a water supply therefor, and to construct, enlarge, extend, repair, alter and improve such plant. . . . .

"Every city, town or village, incorporated under the laws of the Territory of Idaho or of the State of Idaho, shall have power and authority to issue municipal coupon bonds in a sufficient amount to acquire, by purchase or otherwise, a light and power plant for such municipality."

It will be observed that by the amendatory act express authority was granted to issue bonds in order to raise funds with which to enlarge, extend, repair, alter and improve a waterworks plant belonging to a city or village, but that the express authority with respect to bond issues for light and power plant purposes remains as it was before the amendment and is confined to acquiring such plants by purchase, or otherwise.

The manifest purpose of permitting municipalities to issue bonds and to apply the proceeds of the sale of them to acquiring light and power plants is that they and their inhabitants may procure adequate light and power at reasonable rates and under management responsive to the will of their citizens. It does not follow, nor may it be fairly implied in, or as incident to, the power to acquire such a plant and to issue and sell bonds to raise funds with which to pay the cost of

acquiring it, that bonds may be issued and sold in order to raise funds with which to enlarge, extend, repair, alter and improve one already owned by a city, nor is power to do so essential to the accomplishment of the objects and purposes of such a municipal corporation.

It appears to have been the legislative intent that, while a light and power plant may be acquired by means of a bond issue, it must be enlarged, extended, repaired, altered or improved, if found necessary or desirable to do so, with funds derived from its operation, or, at least, from some other source than the sale of bonds. Some of these items clearly are, and others may be, within the scope of maintenance, and there is nothing in the law to suggest a legislative intent that a municipality may raise money with which to maintain its light and power plant by the means here sought to be employed.

Assistance in discovering the legislative intent is to be derived from the fact that authority has been expressly granted to issue bonds to enlarge, extend, repair, alter and improve waterworks plants, while such authority has not been so granted, for like purposes, with respect to light and power plants, although both subjects were treated in the same amendatory act. Had it been intended to grant to municipalities the power here sought to be employed by the city of Idaho Falls, the legislature would have made that intention as clear and unmistakable in the one instance as it did in the other.

The supreme court of the United States, in *Thomas v. West Jersey R. R. Co.*, 101 U. S. 71, 25 L. Ed. 950, see, also, Rose's U. S. Notes, said: "Conceding the rule applicable to all statutes, that what is fairly implied is as much granted as what is expressed, it remains that the charter of a corporation is the measure of its powers, and that the enumeration of these powers implies the exclusion of all others."

Power of municipal corporations in Idaho, to issue and sell bonds for the purposes sought to be served in this case, is neither expressed nor implied in the grant of authority from

the legislature.    The judgment appealed from is reversed. Costs are awarded to appellant.

Rice, J., concurs.

BUDGE, C. J., Dissenting.—The sole question involved is whether the power given to municipalities, by Rev. Codes, sec. 2315, as amended by chap. 16, Sess. Laws 1917, p. 43, is broad enough to authorize them to issue bonds for the purpose of constructing, enlarging, extending, repairing, altering and improving electric light and power plants.    Subdivision (c) of the section, as amended, reads as follows:

"(c) Every city, town or village, incorporated under the laws of the Territory of Idaho or the State of Idaho, shall have power and authority to issue municipal coupon bonds in a sufficient amount to acquire, by purchase or otherwise, a light and power plant for such municipality. . . . . "

In my opinion, the words "acquire by purchase or otherwise," confer powers upon a municipality sufficiently broad to enable it to procure an adequate light and power plant by whatsoever means it deems best, whether by purchasing an existing plant, by constructing a new plant, or by enlarging, extending, repairing, altering and improving any such plant owned by such municipality.

The word "acquire" is defined by Webster's New International Dictionary as follows: "To gain by any means, usually by one's own exertions; to get as one's own; as to acquire a title, riches, knowledge, good or bad habits."    Judicial decisions defining the meaning of the word "acquire," when used in the connection employed in the statute above quoted, seem to be very meagre.    However, the supreme court of California has given the following definition in an analogous case: "The word 'acquire,' within a proposition to issue bonds to acquire electric works, has a broad meaning, including both purchase and construction."    (*Clark v. City of Los Angeles*, 160 Cal. 30, 116 Pac. 722.)

The legislature has not seen fit to limit or define the manner or method by which a municipality may acquire a

light and power plant, and while it is true that a municipal corporation possesses and can exercise only such powers as are granted in express words, or are necessarily or fairly implied in or incident to the powers expressly granted, or essential to the accomplishment of the declared objects and purposes of the corporation, and that any fair, reasonable and substantial doubt concerning the existence of power is resolved against the municipality, it is also true, as stated by Dillon, that "The rule of strict construction does not apply to the *mode adopted by the municipality to carry into effect the powers expressly or plainly granted,* where the mode is not limited or prescribed by the legislature and is left to the discretion of the municipal authorities. In such a case, the usual test of the validity of the act of a municipal body is, Whether it is reasonable? and there is no presumption against the municipal action in such cases." (Dillon on Municipal Corporations, 5th ed., sec. 239.) And again, the same author, quoting from the opinion of Church, J., in *Bridgeport v. Housatonic R. Co.,* 15 Conn. 475, states the following rule:

"In this country, all corporations, whether public or private, derive their powers from legislative grant, and can do no act for which authority is not expressly given, or may not be reasonably inferred. But if one were to say that they can do nothing for which a warrant could not be found in the language of their charters, we should deny them, in some cases, the power of self preservation, as well as many of the means necessary to effect the essential objects of their incorporation. And therefore it has long been an established principle in the law of corporations, that they *may exercise all the powers within the fair intent and purpose of their creation which are reasonably proper to give effect to powers expressly granted.* In doing this, they must (unless restricted in this respect) have a choice of means adapted to ends, and are not to be confined to any one mode of operation." (Dillon on Municipal Corporations, 5th ed., sec. 238.)

A case somewhat similar to the one at bar, and which clearly illustrates the principles underlying this case, is that

of *State v. Allen,* 183 Mo. 283, 82 S. W. 103. In the latter case, the court said:

"2. But it is insisted by respondent that section 12a, art. 10, of the Constitution proposed by the Legislature in 1901, and ordered to be submitted to the qualified voters of this State at the general election to be held in November, 1902, and adopted at said election, does not authorize a city of 2,000 inhabitants and not more than 30,000 inhabitants, with the assent of two-thirds of the voters thereof voting at an election for that purpose, to become indebted to an amount not exceeding an additional 5 per centum on the value of the taxable property therein over and above the amount specified in section 12 of article 10 of the Constitution of this state, for the purpose of purchasing waterworks and for improving the same, but such cities are restricted to one of two alternatives, and they must submit to the voters either a proposition to incur indebtedness to build and construct a new system, or a proposition simply to buy an existing system. A kindred contention was made in the case of *State ex rel. Town of Canton v. Allen,* 178 Mo. 555, 77 S. W. 868, and it was held by this court in banc that it was competent to submit such a proposition in the alternative. We think that case disposes of this point. Here the proposition is one only; i. e., to buy the old waterworks and electric plant and improve them. While it is true that municipal corporations have only such powers as are either expressly granted to them, or such as are necessarily implied, and that grants of power are strictly construed, so as not to extend them beyond the purpose of the Legislature, yet, as said by this court in *Bank v. How,* 56 Mo., loc. cit. 59, 'the construction must not be so strict or technical as to defeat the evident objects and purposes of their creation.' We think the amendment to the Constitution was designed by the people to enable cities of the population named to provide themselves with water and light, and to encourage municipal ownership of the water supply and lighting facilities. Their power to incur indebtedness for such purposes was found by experience insufficient, under the restrictions of our Constitution; and it was within the obser-

vation of the Legislature that, some city having no plant at all, or a very inferior one, the city might desire to issue its bonds and build an entirely new plant. If so, this amendment furnished them the means. On the other hand, there might be, as in this case, a plant already established, with its mains laid and connections established, and the city, to avoid tearing up its highways and to avoid competition, might desire to buy the old or existing plant, and yet, within the limits of its power to raise money, might desire to extend and improve that plant; and when, as in this case, the proposition is plainly put before the voters to buy the old plant and make it available for all purposes, we think it falls clearly within the meaning and spirit of the amendment of section 12a of article 10 of the Constitution, and it is not at all necessary to first purchase, and then have a second election to improve it, but it can all be submitted at one time, and it is one proposition after all. The Legislature have so construed the amendment by the act of March 23, 1903 (Laws 1903, p. 96), wherein they provide that 'the city council of any city . . . . shall have power to erect or acquire by purchase or otherwise, waterworks,' etc., *Electric Company v. City of Newton* (C. C.), 42 Fed. 723; *Endley v. Whitsett*, 85 Mo. App. 79.''

The question here is not whether the city may bond for the purpose of maintaining or operating its light and power plant, but solely whether or not the language used by the legislature is sufficiently broad and was expressly designed to give municipalities the power, by a bond issue, to get or acquire and to own a complete and adequate light and power plant, taking into consideration their varying and growing needs. It certainly could not have been the intention of the legislature to preclude a municipality from acquiring an electric light and power plant where none already existed, nor to require such municipality to get along with a plant which it might acquire and which might prove grossly inadequate. I am, therefore, of the opinion that the addition of the words in subdivision (b) of sec. 2315, *supra*, ''and to construct, enlarge, extend, repair, alter and improve such plant,'' gave

such municipalities with respect to waterworks plants no power in addition to that which had already been given. While "repair" might be a question of maintenance, and the cases seem to make a clear distinction between power to purchase, construct or acquire such plants on the one hand, and to maintain and operate them on the other, particularly in so far as authority to issue bonds is concerned (see among the cases cited in the majority opinion *State v. Wilder,* 200 Mo. 97, 98 S. W. 465), the word as used in the amendment, *supra,* clearly does not have to do with the question of maintenance. It must be construed in the light of the context, and in connection with the words where found. The elemental doctrine of *noscitur a sociis* precludes any such interpretation. The words of the statute are "construct, enlarge, extend, repair, alter and improve." In this connection, clearly the word "repair" relates to the question of constructing, enlarging, extending, altering and improving, and undoubtedly was intended to convey the idea that such repairs as were necessitated, not by way of maintenance but by reason of construction, enlargement, extension, alteration and improvement of a plant would necessarily go along with such expansion.

I agree with that portion of the majority opinion which holds that it was the manifest purpose of the legislature to permit municipalities to issue bonds and apply the proceeds thereof to acquiring a light and power plant, that it and the inhabitants may procure adequate light and power at reasonable rates and under management responsive to the will of the inhabitants of such municipalities, but I am not in accord with that portion of the opinion which states that "it does not follow, nor may it be fairly implied . . . . that the power to acquire such a plant and to issue and sell bonds to raise funds with which to pay the cost of acquiring it, that bonds may be issued and sold in order to raise funds with which to enlarge, extend, repair, alter and improve one already owned by a city, nor is power to do so essential to the accomplishment of the objects and purposes of such a municipal corporation." Neither am I in accord with that part of the

majority opinion which holds that it appears to have been the legislative intent that while a light and power plant may be acquired by means of a bond issue, it must be enlarged, extended, repaired, altered or improved, if found necessary or desirable to do so, with funds derived from its operation, or from some source other than the sale of bonds,

That a municipality may acquire a light and power plant, either by constructing a new plant or by purchasing one already constructed, and that it may issue bonds for that purpose, there can be no question, under the decision of this court in the case of *Ostrander v. City of Salmon*, 20 Ida. 153, 117 Pac. 692.

If the plant acquired by purchase or otherwise is or becomes inadequate to supply the city with light and power, the object sought to be accomplished is not attained, and the city has not acquired a light and power plant within the meaning of sec. 2315, as amended by Sess. Laws 1917, chap. 16, p. 43, subdivision (c), and it is essential that it be permitted by the sale of bonds to construct, enlarge, extend, repair, alter and improve such light and power plant, in order to accomplish the object and purpose in view. To hold that the city may acquire by purchase or otherwise a light and power plant, and to deny it the power to enlarge, extend, alter and improve the same, might deprive the city of acquiring an adequate light and power plant, and leave it in possession of a light and power plant which would not serve its needs.

"Repair" as used in the statute does not mean maintenance. A power plant might be enlarged by the installation of a larger wheel, dynamo, switchboard, transformers or in many other ways. It might be extended by the erection of additional poles, stringing of wires, placing of cross-arms and insulators, placing in position transformers of whatever size and capacity found necessary. It might be altered and improved in the same manner. And whatever repairs might be necessitated by the enlargement, extension, alteration or improvement of the plant would simply constitute a part of the extension, enlargement, alteration or improvement. All of

these terms, as used in the statute, are synonymous, and when construed in the light of what must have been the legislative intent, they state but a single object and purpose, namely, the establishment of a municipal improvement, an adequate light and power plant, in whatever manner the inhabitants of the municipality may deem best, in order that they may be furnished with light and power at reasonable rates, and with a system made responsive to their management. In other words, if a municipality is authorized to vote a bond issue and build an adequate light and power plant, and also has the power to buy one already built, it certainly has the power to make it adequate by enlarging, extending, repairing, altering or improving it.

A fair and reasonable construction of the language of subdivision (c), *supra,* would, as it seems to me, be that the statute gives municipalities full power to acquire by purchase or otherwise, i. e., by any other means the municipality may see fit, a light and power plant of sufficient magnitude to supply the needs of the municipality. The mere purchase of a single plant does not exhaust the power of a municipality under the statute, which clearly gives a continuing power to acquire such a plant. It may well be that a plant purchased, constructed or otherwise acquired, might be adequate at the time, but in a rapidly growing community, it might become grossly inadequate within a very short period, but the statutory authority still remains to acquire a light and power plant adequate for the uses of the municipality. They may purchase another if it is available or as many others as may be necessary. They may build or construct such a plant, if none is available. They may enlarge, extend, alter or improve such a plant until one is acquired which adequately meets the requirements of the municipality. The following language of the New York court of common pleas will serve to illustrate the principle:

"This provision is contained in a statute purporting to provide the necessary powers for the government and regulation of the city, and which evidently looked forward to its future growth and rapid increase. Under such circum-

stances, to construe provisions regulating the building and enlarging of wharves, piers and slips, as sections limiting the power of the common council to those then existing, would be adopting a limited mode of construction to which I could not assent, and which would be in direct opposition to the whole scope and intent of the statute. On the contrary, the power there granted is a continuing power, applicable not only to the slips existing at the time of the passage of the act, but to such slips as may from time to time be constructed for the welfare of the city. Such acts, intended for the public convenience, and connected with the necessary regulation and regular supply of the wants of a rapidly growing city, are entitled to a liberal construction in favor of the public interests. In the language of Judge Bronson, 'The authority is in its nature a continuing power, or one which does not cease the moment it is once executed.' It was given for the purpose of promoting the public convenience, although the power should never be exercised capriciously, or upon light considerations. (*In re Furman St.*, 17 Wend. (N. Y.) 667.)'' (*Marshall v. Vultee*, 1 E. D. Smith's Reports, 294, at 306; Lewis' Sutherland Statutory Construction, 2d ed., sec. 682; *Brown v. Graham*, 58 Tex. 254.)

No reason can be assigned why the legislature should have given or should have intended to have given municipalities larger authority with respect to municipal waterworks than with respect to municipal light and power plants. The object and purpose in the one instance is to procure a municipally owned and controlled water supply, and in the other instance to procure a municipally owned and controlled light and power supply. As was said by the supreme court of Texas in *Brown v. Graham, supra:*

''Such a consideration would not, in itself, authorize us to infer a power when not expressly given or necessarily implied. Yet when the language used is capable of including authority to do an act not mentioned in terms, such construction of it is greatly aided by considerations of public advantage, which it would certainly produce.''

The bond issue was well within the power and authority granted by the legislature and the judgment should be affirmed.

## ON PETITION FOR REHEARING.

### (January 17, 1919.)

RICE, J.—Respondents have filed a petition for rehearing in this case. In this petition reference is made to the situation confronting the city of Idaho Falls. It is suggested that the growth of the community makes it necessary to build a new power-house, install new machinery, blast an intake channel to supply water for the new machinery, and do whatever would be necessary in case the city constructed an entire new plant. It is also suggested that the law would permit the city to issue bonds for the purpose of acquiring a new plant, or to build one immediately adjoining the existing plant already owned by the city.

Had the ordinance in question, by appropriate language, limited the expenditure of the proceeds of the proposed bonds to the purposes suggested in the petition for rehearing, a different question would have been presented. By the ordinance in question it was proposed to use the funds derived from the issue of the bonds for the purpose of acquiring an adequate electric light and power plant, by enlarging, extending, repairing, altering and improving the plant now owned and controlled by the said city. Under this ordinance the entire proceeds of the bonds might have been expended in repairs, alterations or improvements of the existing plant.

We must adhere to the views expressed in the original opinion, that the law does not contemplate the issuance of bonds for such purposes.

The petition for rehearing will be denied.

Morgan, C. J., concurs.

BUDGE, J.—I still adhere to my views as expressed in the dissenting opinion on the original hearing.